UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CHEF ALESSANDRO PIROZZI, INC.                     No. 2:22-cv-00902-DG-AYS
and PIROZZI ENTERPRISES, LLC,
                                                  <u>**AMENDED COMPLAINT**</u>
                                  *Plaintiffs*,          <u>**and**</u>
                                                  <u>**JURY TRIAL DEMAND**</u>
              -against-

CARDCONNECT, LLC
and FISERV, INC.,

                                  *Defendants*.
_____

   Plaintiffs Chef Alessandro Pirozzi, Inc. ("Pirozzi, Inc.") and Pirozzi Enterprises, LLC

("Pirozzi Enterprises") (collectively, "Plaintiffs"), by and through their undersigned counsel,

Barclay Damon LLP, for their Amended Complaint against Defendants CardConnect, LLC

("CardConnect") and Fiserv, Inc. ("Fiserv") (collectively, "Defendants"), states as follows:

<u>**NATURE OF ACTION**</u>

   1.  Collecting and processing credit card payments is indispensable to the success of

any small business, and in particular, restaurant owners. They depend on third-party credit card

processors to accurately collect their hard-earned customer payments and securely transfer funds

to the restaurant's bank account in order to compensate employees and remain in operation.

   2.  This action arises from the systematic misconduct of Cardconnect and Fiserv in

connection with its failed attempts to provide credit card processing for multiple successful

restaurants.

<u>**PARTIES**</u>

   3.  Plaintiff Pirozzi, Inc. is a California corporation that operates the popular Italian

restaurant Alessa by Chef Pirozzi ("Alessa") located in Laguna Beach, California.  Pirozzi, Inc. is

owned and operated by Chef Alessandro Pirozzi ("Chef Pirozzi"), a world renowned chef and entrepreneur.

4. Plaintiff Pirozzi Enterprises is a California limited liability company that operates Salerno's Ristorante ("Salerno"), which is also located in Laguna Beach and is owned and operated by Chef Pirozzi.

5. Defendant Cardconnect is a limited liability company headquartered in King of Prussia, Pennsylvania that is a wholly owned subsidiary of Fiserv, Inc. CardConnect is a merchant account service provider that maintains electronic credit card point of sale infrastructure, payment gateways, and other financial technology for the transfer of sales from customer to proprietor. CardConnect's payments platform is known as CardPointe. Businesses that work with CardConnect can accept and manage credit card payments through the CardConnect's CardPointe platform.

6. Defendant Fiserv is a corporation organized under the laws of the State of Wisconsin with a principal place of business at 255 Fiserv Drive, Brookfield, Wisconsin 53008.

7. Upon information and belief, at all times mentioned herein, CardConnect utilized the services of Fiserv and its employees as a third party subcontractor and/or agent, and both parties acted within the course and scope of such agency, partnership, and each of the acts performed by each of the said co-defendants as hereinafter alleged were performed with the express or implied consent and authority of one another. According to CardConnect's website, "CardConnect is a payments platform of Fiserv." *See* https://cardconnect.com/company/about. Moreover, the services of CardConnect are subject to Firserv's Privacy Policy. Fiserv has exercised, or should have been exercising, control over CardConnect's activities and is vicariously liable for the harm

caused herein by CardConnect, and independently liable for its own unlawful acts, omissions, concealments, and misrepresentations.

## JURISDICTION AND VENUE

8.      This action was originally commenced in the Superior Court of California on November 22, 2021.  Thereafter, Defendants removed this case to United State District Court for the Central District of California and moved to dismiss, or in the alternative, to transfer the matter to the Eastern District of New York.  On February 16, 2022, Defendants' motion to transfer was granted and the Court declined to decide Defendants' motion to dismiss.  (Dkt. 14).

9.      Thereafter, the parties agreed that Plaintiffs be entitled to file an Amended Complaint. (Dkt. 20).

10.     Venue is proper in this District pursuant to the California District Court's Order (Dkt. 14).

11.     This Court has subject matter jurisdiction over the claims in this Complaint under 28 U.S.C. § 1332 (diversity jurisdiction).

12.     This Court has personal jurisdiction over Defendants because Defendants have contacts with this jurisdiction sufficient to subject it to personal jurisdiction in this District.

## FACTUAL BACKGROUND

13.     Chef Pirozzi, owner of Pirozzi, Inc., is a native of southern Italy, who has built several successful restaurants in Orange County California.  He is renowned for his authentic classic Italian dishes and homemade pasta.  Pirozzi, Inc. has operated Alessa and Pirozzi Enterprises has operated Salerno in Laguna Beach, California since 2010.

14.     In November of 2020, Pirozzi, Inc. entered into a "Merchant Processing Application and Agreement" ("Agreement") with CardConnect. The parties also agreed to abide

by the Merchant Services Program Terms and Conditions ("Terms and Conditions") provided by CardConnect, which was incorporated into the Agreement. A copy of the Agreement with the accompanying Terms and Conditions is annexed as Exhibit "A."

15. Pursuant to the Agreement, CardConnect agreed to provide credit card payment processing technology services for customer transactions completed at Alessa and was responsible for transferring credit card sales to designated Pirozzi, Inc. bank accounts. Pirozzi Enterprises entered into a similar agreement to process receipts related to Salerno. Alessa and Salerno were each assigned a unique Merchant Account Number associated with their particular sales.

16. CardConnect represented that it would safely and securely maintain the credit card sale technology used by Pirozzi, Inc. and safely and securely transfer the sales receipts of Pirozzi, Inc.'s business to the correct Bank of America accounts maintained by Pirozzi, Inc. Specifically, Section 23.6 of the Terms and Conditions sets forth that transfer of funds from CardConnect to Pirozzi, Inc. "shall be based on the account number and routing number supplied by you [Pirozzi, Inc.]" (Exhibit A, p. 21).

17. As stated in the Agreement, Pirozzi, Inc. provided a particular Bank of America bank account to receive transfers from CardConnect. In order to modify the bank account information, an authorized Pirozzi, Inc. representative (Chef Pirozzi) would need to provide particular security information in accordance with security procedures established and controlled by Defendants.

18. Pursuant to Section 33.2 of the Terms and Conditions, CardConnect agreed to indemnify and hold harmless Pirozzi, Inc. from and against all losses, liabilities, damages and expenses resulting from any breach of any warranty, covenant or agreement or any

misrepresentation by CardConnect under the Agreement or arising out of their employees' gross negligence or willful misconduct in connection with this Agreement. (Exhibit A, p. 25).

19.    The Terms and Conditions also required Pirozzi, Inc. to use CardConnect as its exclusive provider of all credit card processing services.  (Exhibit A, p. 21).

20.    Pirozzi, Inc. entered into the Agreement based on the representations by CardConnect regarding its capabilities and intentions to perform in accordance with the Agreement, including the specific representations concerning the sufficiency of Defendants' security controls, including that any transfer of funds for Pirozzi, Inc. shall be made only to an account number and routing number supplied by Pirozzi, Inc.  These representations were material to Pirozzi, Inc., and Pirozzi, Inc. relied on them in deciding whether to enter into the Agreement. Accordingly, Pirozzi, Inc. relied upon the actions, statements, and promises of CardConnect for the security of all of Alessa and Salerno's credit card transactions, and then to transfer said receipts to the proper Pirozzi, Inc. bank account.

21.    From November of 2020 to August of 2021, CardConnect regularly transferred funds to Pirozzi, Inc.'s designated Bank of America bank account.

22.    At no time prior to August of 2021 did Chef Pirozzi, or any authorized agent of Pirozzi, Inc., request that CardConnect change the designated bank account for CardConnect transfers to any other bank account or provide alternative bank account information of any kind.

23.    On or around August 10, 2021, accounting professionals observed that CardConnect ceased making transfers to Pirozzi, Inc.'s account.

24.    Thereafter, Chef Pirozzi began his attempts to contact CardConnect to retrieve the missing funds during which he was repeatedly misled, lied to, and deceived by both CardConnect and Fiserv employees as to the whereabouts and return of the missing funds. Chef Pirozzi was

repeatedly promised by representatives of CardConnect and Fiserv that the funds would be returned in full to his bank account. All the while, CardConnect continued to collect credit card point of sale receipts associated with both Alessa and Salerno and withhold funds from Pirozzi, Inc. Upon information and belief, Defendants' conduct was designed to string Chef Pirozzi along with false promises that the funds would be returned in order maintain Pirozzi, Inc. and Pirozzi Enterprises as customers and continue to charge membership fees as well as lull Pirozzi, Inc. into a false sense of security that Defendants would make Pirozzi, Inc. whole. To date, Chef Pirozzi and Pirozzi Inc. have been unable to retrieve the entirety of the missing funds collected by Defendants under the Agreement.

25. Shortly after discovering that CardConnect ceased transferring point of sale receipts to Pirozzi, Inc., Chef Pirozzi began contacting CardConnect customer support. Chef Pirozzi left several messages and did not receive any return phone calls for several days.

26. On or around August 21, 2021, Chef Pirozzi eventually was put in contact with CardConnect employees known as "Delva" and "Heather."

27. As of Chef Pirozzi's initial contact with CardConnect regarding the missing funds, it is estimated that CardConnect failed to transfer approximately $325,000 of point of sale receipts.

28. Delva and/or Heather initially informed Chef Pirozzi that CardConnect would not immediately transfer the funds to Pirozzi, Inc.'s account, but rather, would open a "Ticket Number," referred to as 42367280.

29. Delva and/or Heather informed Chef Pirozzi that CardConnect's records reflected that the Bank of America bank account number for the Alessa Merchant Account was a different Bank of America account number than the one operated by Pirozzi, Inc. and that Pirozzi, Inc.'s Bank of America account was compromised.

30.     Delva and/or Heather did not disclose to Chef Pirozzi that the funds had already been transferred to another bank account that did not belong to Pirozzi, Inc.

31.     In response, Chef Pirozzi informed Delva and/or Heather that no one from Pirozzi, Inc. had changed any bank account information associated with any of the Pirozzi, Inc. Merchant Account Numbers.  Chef Pirozzi requested documentation regarding any alleged change to his bank account information, but did not receive same.

32.     When Pirozzi later spoke with Delva and/or Heather, they provided a new Ticket Number of 42650670 and did not provide any explanation for the change in ticket number.  Delva and/or Heather instructed Chef Pirozzi not to give the 42650670 number to anyone else, including any other CardConnect representatives.

33.     Delva and/or Heather also informed Chef Pirozzi that he would need to open a new Bank of America account and re-send his account information to CardConnect. Delva and/or Heather promised that once Chef Pirozzi provided new Bank of America account information, the missing funds would be transferred within a few days.

34.     Delva and/or Heather informed Chef Pirozzi that he would soon receive a letter via regular mail requesting his new Bank of America account information.  Delva and/or Heather instructed Chef Pirozzi to include a void check and to send the paperwork to an individual referred to as Bonnie Clark.  Again, Chef Pirozzi was promised that he would receive the funds within 1 or 2 days after sending his account information.  Delva and/or Heather also told Chef Pirozzi that they would only communicate with him regarding the missing funds over the telephone and to refrain from using any written form of communication.

35.     Delva and/or Heather also described to Chef Pirozzi that she was once also a victim of a hacker.  Delva and/or Heather provided no further explanation regarding how hacking was

connected to the missing funds belonging to Pirozzi, Inc.  Delva and/or Heather further stated that they used to work for the military and as a consultant for cybersecurity. Delva and/or Heather instructed Chef Pirozzi that the military and cyber security background of Delva and/or Heather would be a secret code for future communication between them.  The suggestion was that no further actions would be taken unless Chef Pirozzi first confirmed his knowledge of their military and cybersecurity history.

36.     Delva and/or Heather also informed Chef Pirozzi that his account at had been marked as only serviceable by the CardConnect and Fiserv management team, which consisted of Bonnie Clark, Travis Bellet, Delva, and Heather.

37.     Upon information and belief, at no time did Delva and/or Heather intend to honorably and in good faith discharge their duties and honor the promises made to Pirozzi, Inc.  Rather, Delva and/or Heather engaged in a series of lies to cover up the fact that CardConnect had transferred funds belonging to Pirozzi, Inc. to the wrong account.

38.     Approximately ten days after his last conversation with Delva and/or Heather, Chef Pirozzi received the paperwork requesting Pirozzi Inc.'s new bank account information.  Chef Pirozzi set up new Bank of America accounts, but was thereafter unable to get in contact with Delva and/or Heather for several days.  His calls repeatedly went unanswered.

39.     Chef Pirozzi also began contacting Bonnie Clark and leaving her voicemail messages because she was the representative that he was supposed to send the bank account paperwork.  Chef Pirozzi intended to get the documentation to Ms. Clark, but had yet to do so.

40.     On or around September 10, 2021, Ms. Clark finally contacted Chef Pirozzi over the phone and indicated that she had received the requested bank account documentation from Chef Pirozzi.  In reality, this was false because Chef Pirozzi did not send any such documentation.

Ms. Clark then disclosed the bank account associated with the Alessa Merchant Account Number had been changed to a Chase Bank account and that the security information had also been changed by an unknown caller.

41. Needless to say, this was a shock to Chef Pirozzi. Chef Pirozzi immediately stated to Ms. Clark that he had not authorized any such account change and he only banks with Bank of America. Chef Pirozzi also informed Ms. Clark that he had not sent any of the referenced documentation.

42. In response, Ms. Clark indicated that she had spoken with a person purporting to be Chef Pirozzi. Chef Pirozzi denied that they had spoken regarding changing the account to a Chase account. Ms. Clark stated that the caller had an accent similar to Chef Pirozzi. Chef Pirozzi demanded that Ms. Clark provide him with the Chase account information and the recording of the call with this individual. Ms. Clark refused to provide the Chase account information, despite the fact that she claimed Chef Pirozzi had provided it to her, or the recording of the call with the unknown third party. Rather, Ms. Clark agreed to change the bank account information back to Bank of America if Chef Pirozzi provided the account details and then Ms. Clark would transfer the missing funds.

43. Having no choice but to provide the Bank of America account information in order to retrieve the missing funds, Chef Pirozzi provided his new Bank of America account information and Ms. Clark promised that the missing funds would be transfer to the correct Pirozzi, Inc. account in one to two days.

44. Approximately five days later, the funds remained missing and there was no deposit in the new Bank of America account, or any other bank account belonging to Pirozzi, Inc. At this juncture, the missing receipts totaled over $600,000.

45.     Chef Pirozzi again reached out to Ms. Clark, but was unable to get in contact with her.

46.     Chef Pirozzi was instructed by CardConnect to contact Mr. Bellet, a manager of Fiserv, to obtain the missing funds.  On or about August 31, 2021, and on September 1 through 5, 2021, Chef Pirozzi left several messages for Mr. Bellet explaining in detail all the steps outlined herein and explaining the problem of the missing $600,000 in receipts.

47.     Chef Pirozzi filed a complaint with the Laguna Beach Police Department, which opened an investigation into CardConnect.

48.     Thereafter, Mr. Bellet contacted Chef Pirozzi at the urging of a Laguna Beach Police Department Detective.  Mr. Bellet stated that he had been contacted by Laguna Beach Police Department and apologized for the tremendous inconvenience and that the receipts belonged to Pirozzi, Inc.  Mr. Bellet expressly promised that the missing funds would be would be deposited into the correct account as soon as possible.  At this time the amount of missing receipts totaled approximately $700,000.

49.     Upon information and belief, Mr. Bellet also contemporaneously informed members of the Laguna Beach Police Department that the missing funds would be transferred to Pirozzi, Inc.

50.     Following Chef Pirozzi's conversation with Mr. Bellet, counsel for CardConnect and Fiserv began contacting Pirozzi, Inc.'s counsel.  CardConnect and Fiserv's attorneys offered to immediately return approximately $325,000 of funds from the Reserve Account associated with Pirozzi, Inc.'s account.

51.     In exchange for partial return of funds belonging to Pirozzi, Inc., Defendants sought a release of liability from Pirozzi, Inc. for any and all wrongdoing associated with its conduct in connection to Pirozzi, Inc.

52.     Pirozzi Inc. did not execute the release, but CardConnect and Fiserv nevertheless released funds in the amount of approximately $427,000 in or around October of 2021 and simultaneously deduced over $9,000 in merchant fees.  This amount represents only a fraction of what is owed to Pirozzi, Inc.  Receipts in excess of $400,000 remain outstanding and have not been returned to Pirozzi, Inc. by CardConnect or Fiserv.

53.     Ultimately, Fiserv's counsel informed Pirozzi, Inc.'s counsel that the funds were transferred by Defendants to a One West Bank Account and a Chase Bank account, and that Fiserv was unaware of who owns those bank accounts.

54.     Pirozzi, Inc. was significantly damaged by this series of events.  Chef Pirozzi and Pirozzi, Inc. have accumulated a significant amount of debt through loans and credit cards in order to financially stay afloat operating restaurants in the midst of the COVID-19 pandemic.

55.     Pirozzi Enterprises was also damaged by Defendants' misconduct by virtue of the fact that it was forced to transfer funds to Pirozzi, Inc., pay for Pirozzi, Inc.'s expenses and invoices, and take on additional debt as a result of Defendants' failure to properly transfer the funds belonging to Pirozzi, Inc.

56.     On or around November 3, 2021, Pirozzi, Inc. ceased utilizing CardConnect systems and began using another credit card processing vendor.

57.     Despite the fact that CardConnect has wreaked havoc on Pirozzi, Inc. and that neither Alessa nor Salerno utilizes its services, CardConnect has charged membership and servicing fees to Pirozzi, Inc. for December 2021, January 2022, and February 2022.

58.     Chef Pirozzi filed a complaint with the Federal Bureau of Investigation and the Federal Trade Commission against CardConnect for the monies that belonged to him. Upon information belief, the investigations remain pending.

59.     Upon information and belief, Defendants have a well-known history of "losing" or "misplacing" receipts of business owners and then attempting to pressure business owners into settling said losses for pennies on the dollar.  Moreover, Defendants have a well-known history of representing to customers that their information is safeguarded, when in actuality, Defendants fail to adequately safeguard the information and fail to warn its customers against fraud risks.  Upon information and belief, this unlawful business practice has led to millions of dollars of ill-gotten gains by Defendants.

60.     Defendants' acts, omissions, concealments, and misrepresentations as set forth herein were intentional, willful, wanton, malicious, reckless, oppressive, egregious, and outrageous, are torts or actionable as independent torts, jeopardize the public and are part of a pattern directed at the public generally, offend public policy, are based on evil and reprehensible motives, involve an extraordinarily disingenuous and dishonest failure to carry out Defendants' obligations, and involve a high degree of moral turpitude demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations.

61.     Defendants knew, in light of the unique nature of their business providing credit card processing services to restaurants, that their acts, omissions, concealments, and misrepresentations would cause serious damage and give rise to legal liability.  Indeed, Defendants have engaged in and have knowledge of prior similar injury-causing incidents suffered by Defendants' other customers.

62.     The parties were in a relationship of trust and confidence in which Defendants wielded superior knowledge, skill, expertise, and influence over Pirozzi, Inc. Among other reasons, Defendants control access to Pirozzi, Inc.'s bank account records and information, Defendants were was in an exclusive relationship with Pirozzi, Inc., Defendants prohibited Pirozzi, Inc. from performing certain services through other credit card processing providers, and Defendants sought to induce the dependence and trust of Pirozzi, Inc.

63.     Defendants have received ill-gotten gains from its acts, omissions, concealments, and misrepresentations by, among other things, causing Pirozzi Inc.'s customers to spend money thinking it is going to Pirozzi, Inc., but failing to deliver it to Pirozzi, Inc., while also charging and collecting Defendants' fees from Pirozzi, Inc.

64.     Defendants' acts, omissions, concealments, and misrepresentations have harmed the public generally. Such harm has befallen Pirozzi, Inc., an individually owned small business, as well as the thousands of individual consumers who are Pirozzi, Inc. patrons.  Further, Defendants have employed standardized policies and business practices.  Accordingly, such harm has befallen other restaurants and small businesses that are customers of Defendants, as well as those restaurants' individual consumers. These harms are part of a pattern of behavior Defendants directs at the public generally.

65.     Public policy supports an award of punitive damages, given that Pirozzi, Inc. is a small business restaurant operation, and, as demonstrated during the COVID-19 pandemic, restaurants provide an essential consumer service.

66.     Accordingly, punitive damages are appropriate in addition to any compensatory damages for harm done to Pirozzi, Inc. Such damages are necessary to deter Defendants and others

from committing similar incidents in the future, and the amount of such punitive damages awarded should be sufficient to have a deterrent effect on Defendants.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(CardConnect Agreement)**
***Against CardConnect Only***

67.     Plaintiffs incorporate and reallege the preceding paragraphs.

68.     The Agreement is a valid and binding obligation of CardConnect.

69.     In addition to the express terms of that contract, the implied covenant of good faith and fair dealing applies to CardConnect's Agreement with Pirozzi, Inc. When reasonably read, the terms of that contract imply certain other obligations that are necessary to vindicate the parties' apparent intentions and reasonable expectations. By entering into the Agreement, CardConnect impliedly covenanted that it would act in good faith, including by providing credit card processing services suitable for the proper functioning of a restaurant and issuing invoices that were legitimate, bona fide, good faith, and supported.

70.     In the Agreement, CardConnect accepted primary liability for its subcontractors' performance, including the performance of Fiserv, as set forth in Section 39.13 of the Terms and Conditions.

71.     Pirozzi, Inc. has duly performed all obligations and satisfied all conditions required of it under the Agreement, except for those that were waived or excused by CardConnect.

72.     CardConnect has materially breached its obligations under the Agreement by, among other things, failing to perform as required under the Agreement, failing to transfer credit card receipts owed to Pirozzi, Inc., failing to comply with applicable laws as required in Section 45.2 of the Terms and Conditions, and breaching the implied covenant of good faith and fair

dealing by acting in a manner that deprived Pirozzi, Inc. of the right to receive the benefits of the Agreement.

73.     CardConnect has demonstrated a lack of good faith and fair dealing by, among other things, failing to properly safeguard the payments owed to Pirozzi, Inc., failing to implement security controls in accordance with commercial norms, engaging in a series of failures to return the funds owed to Pirozzi, Inc., and continuing to charge membership fees for services not rendered, thereby depriving Pirozzi, Inc. of the benefit of the bargains the parties struck.

74.     CardConnect failed to remedy the missing receipts and instead insisted that Pirozzi, Inc. continue to receive services from CardConnect.

75.     CardConnect's conduct is inconsistent with the terms and purposes of its Agreement with Pirozzi, Inc.  CardConnect's lack of good faith and fair dealing has had the effect of preventing Pirozzi, Inc. from receiving the reasonably expected benefit of the parties' bargain by, among other things, unreasonably and unnecessarily depriving Pirozzi, Inc. of the benefit of the credit card sales processing services, which were to be provided by CardConnect, exposing Pirozzi, Inc. to vastly greater harm than it had bargained for and well outside of commercially reasonable norms, and causing Pirozzi, Inc. to remit payments to CardConnect that are not justly due to CardConnect or supported by any good-faith basis.

76.     CardConnect's breaches were caused by bad faith and its willful, malicious, or grossly negligent conduct, were not reasonably contemplated by Pirozzi, Inc., were so unreasonable as to constitute an abandonment of the Agreement, and were breaches of fundamental obligations of the Agreement.

77.     Indeed, despite a pattern of recurring and known security lapses, CardConnect was grossly negligent and reckless, failed to use even a slight degree of care, and acted with complete

disregard for Pirozzi, Inc.'s rights. Although CardConnect had knowledge that its system was vulnerable and susceptible to vulnerabilities that compromised the confidentiality of customer bank account data, CardConnect failed to address properly these issues, including by failing to put Pirozzi, Inc. on notice of them, and refusing to implement the promised, much less commercially reasonable, security controls.

78.     As a result of CardConnect's breach of contract, Pirozzi, Inc. has suffered and will suffer damages and irreparable harm.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract/Promissory Estoppel**
**(CardConnect's Privacy Policy and Fiserv's Privacy Notice)**
***Against All Defendants***

79.     Plaintiffs incorporate and reallege the preceding paragraphs.

80.     CardConnect utilizes a publicly available "Privacy Policy," which sets forth CardConnect's responsibilities with respect to the security and protection of its customer data.  A copy of the CardConnect Privacy Policy is available at  https://cardconnect.com/privacy-policy.

81.     Fiserv utilizes a publicly available "Privacy Notice," which sets forth Fiserv's responsibilities with respect to the security and protection of its customer data. The Privacy Notice applies to Fiserv and all of its subsidiaries and affiliates, including CardConnect.  A copy is available at https://www.fiserv.com/en/about-fiserv/privacy-notice.html.

82.     The Privacy Policy and Privacy Notice are valid and binding contractual obligations of CardConnect and Fiserv.  Alternatively, to the extent the Privacy Policy and Privacy Notice are not valid or enforceable contracts, they are enforceable under principles of promissory estoppel because the promises contained in them were reasonably relied upon by Plaintiffs to their detriment, including when deciding whether to transact business with CardConnect and Fiserv and furnish Plaintiffs' sensitive banking information to them.

83.     Plaintiffs have duly performed all obligations and satisfied all conditions required of them under the Privacy Policy and Privacy Notice.

84.     Section 6 of CardConnect's Privacy Policy promises that CardConnect "will take all reasonable precautions to prevent the loss, misuse or alteration of your personal information."

85.     Section 6 of Fiserv's Privacy Notice attests that Fiserv will install appropriate security measures to prevent against the unauthorized alteration of customer data.

86.     By allowing an unknown third-party to change Pirozzi, Inc.'s bank account information on file with CardConnect as a result of inadequate security controls, thereby allowing Pirozzi, Inc.'s funds to be transferred to an unauthorized bank account(s), Defendants breached their obligations under the Privacy Policy and Privacy Notice and violated their promises to Plaintiffs.

87.     As a result of Defendants' breaches of the Privacy Policy and Privacy Notice, Plaintiffs have suffered and will suffer damages and irreparable harm.

### THIRD CLAIM FOR RELIEF
**Bailment**
*Against All Defendants*

88.     Plaintiffs incorporate and reallege the preceding paragraphs.

89.     In a bailment intended to mutually benefit Pirozzi, Inc. and Defendants, Defendants have accepted delivery of Pirozzi, Inc.'s point of sale receipts, including specifically identified funds, and thereby accepted a duty to account for them and to exercise ordinary care in relation to them.

90.     As part of this bailment, it was understood that Defendants would return Pirozzi, Inc.'s funds to the designated bank account, as the funds do not belong to Defendants. At all times, title to the funds remained with Pirozzi, Inc.

91.     Pirozzi, Inc. has demanded that Defendants return said funds and Defendants breached their duties as bailees by refusing to return Pirozzi, Inc.'s funds, improperly transferring the funds to an unknown third-party, and/or otherwise distributing them in a manner inconsistent with Pirozzi, Inc.'s rights.

92.     As a direct and proximate result of Defendants' breach of bailee duties, Pirozzi, Inc. has suffered and will suffer damages and irreparable harm.

### FOURTH CLAIM FOR RELIEF
### Fraud/Fraudulent Inducement
#### *Against All Defendants*

93.     Plaintiffs incorporate and reallege the preceding paragraphs.

94.     As set forth in the preceding paragraphs, on several occasions during the course of the parties' relationship, Defendants made false acts, omissions, concealments, and misrepresentations.  For example, Defendants provided Chef Pirozzi with contradictory and misleading reasons regarding why the funds generated by his restaurant sales were not transferred by Defendants to Pirozzi, Inc. bank accounts.  He was initially informed that the funds were not transferred because of a compromised bank account and then later informed that the funds had been transferred to an account with an entirely different bank.  Further, he was informed on multiple occasions that the missing funds would be returned to him and yet, despite these representations that began as early as August of 2021, Defendants had no intention of returning the entirety of the funds to Pirozzi, Inc.  As another example, Defendants lied about the confidentiality and security over Plaintiffs' bank account information and funds entrusted to Defendants.

95.     Defendants' acts, omissions, concealments, and misrepresentations are directly contradicted by information that was known by Defendants. Defendants are responsible for knowing the existence and contents of information within its custody and control.

96.     Defendants' acts, omissions, concealments, and misrepresentations are directly contradicted by information that either (a) originated from or concerns Defendants and their service offerings, and was thereby known by Defendants, or (b) was provided to Defendants by third parties such as Pirozzi, Inc., and such information was thereby known by Defendants. Defendants are responsible for knowing the existence and contents of information within their custody and control. Accordingly, Defendants' acts, omissions, concealments, and misrepresentations were knowingly false when made or recklessly made without regard to their falsity.

97.     Defendants made their acts, omissions, concealments, and misrepresentations with the specific intent of, among other things, inducing Pirozzi, Inc. to enter into contracts with Defendants, including the Agreement. The Agreement did not disclaim reliance on the specific acts, omissions, concealments, and misrepresentations at issue, and their falsity was within Defendants' peculiar knowledge and could not have been reasonably discovered by Pirozzi, Inc. at the time of execution.

98.     Pirozzi, Inc. has justifiably relied on Defendants' acts, omissions, concealments, and misrepresentations to Pirozzi, Inc.'s detriment by, among other things, entering into an Agreement with CardConnect that Pirozzi, Inc. had no duty to enter into, entering into transactions that provided Defendants with additional and excessive profits, paying Defendants amounts that were not justly due to them, and allowing Defendants access to Pirozzi, Inc.'s funds.

99. Throughout the period that Chef Pirozzi sought return of the funds from Defendants, he remained a customer of Defendants, Defendants continued to collect credit card point of sale receipts associated with both Alessa and Salerno, and Pirozzi, Inc. was charged membership and service fees.

100. Defendants' conduct was designed to string Chef Pirozzi along with false promises that the funds would be safeguarded and then properly distributed to Pirozzi, Inc. in order maintain Pirozzi, Inc. as a customer and continue to charge membership fees. Indeed, Chef Pirozzi relied on Defendants' promises and statements that the funds would be returned to him to his detriment and remained a customer of Defendants during the period in question.

101. Defendants knew or should have known that their acts, omissions, concealments, and misrepresentations were false or recklessly made without regard to their falsity, they were material to Pirozzi, Inc., and made with the intent of misleading Pirozzi, Inc. into relying upon them, and Pirozzi, Inc. did so justifiably rely. By their acts, omissions, concealments, and misrepresentations, Defendants defrauded Pirozzi, Inc.

102. As a direct and proximate result of Defendants' fraud, Pirozzi, Inc. has suffered and will suffer damages and irreparable harm.

### FIFTH CLAIM FOR RELIEF
**Conversion**
*Against All Defendants*

103. Plaintiffs incorporate and reallege the preceding paragraphs.

104. Pirozzi, Inc. has a property interest in the credit card funds collected by Defendants, as well as in funds that are due and owing to Pirozzi, Inc. Such funds are specifically identifiable and subject to an obligation to be treated in a particular manner.

105.    Pirozzi, Inc. enabled Defendants to receive its credit card receipts with the understanding that Defendants would transfer the funds to Pirozzi, Inc. on a regular basis.

106.    Pirozzi, Inc. has demanded that Defendants return such property, or such demand was excused and rendered unreasonable by Defendants' acts and omissions.

107.    Defendants have converted this property by refusing to return it, destroying it, compromising its integrity, misusing it, and otherwise dealing with it in a manner inconsistent with Pirozzi, Inc.'s rights.

108.    Defendants' actions to conceal the whereabouts of the funds and mislead Pirozzi, Inc. into believing that the funds would be returned after Pirozzi, Inc. demanded return of the funds are independent from any breach of contract set forth above.

109.    As a direct and proximate result of Defendants' conversion, Pirozzi, Inc. has suffered and will suffer damages and irreparable harm.

**SIXTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
*Against All Defendants*

110.    Plaintiffs' incorporate and reallege the preceding paragraphs.

111.    Pirozzi, Inc. and Defendants had a special relationship whereby Pirozzi, Inc. trusted and had confidence in Defendants to properly administer and process its credit card receipts and to perform their duties required in the Agreement and Terms and Conditions that went beyond an ordinary business relationship.   Defendants were the sole exclusive vendor responsible for handling all of Pirozzi, Inc.'s credit card processing and Pirozzi, Inc. entrusted its confidential bank account information to Defendants.

112.    Defendants knew that Pirozzi, Inc. would rely on them to properly process their credit card receipts and safely transfer the funds to their bank accounts.

113.     As such, Pirozzi, Inc. wholly relied on Defendants with respect to the operation and management of their credit card sales and had confidence Defendants would properly manage this function.

114.     Defendants breached their fiduciary duty to Pirozzi, Inc. through various acts and/or omissions including, but not limited to, the following: changing the designated Pirozzi, Inc. bank account without Chef Pirozzi's permission; failing to notify Pirozzi, Inc. of the change in bank account; transferring funds belonging to Pirozzi, Inc. to an unknown third-party; providing false and misleading information regarding the status of the missing funds; and making repeated promises that the funds would be returned to Pirozzi, Inc. in full that were not fulfilled.

115.     As the result of Defendants' breach of their fiduciary duty to Pirozzi, Inc., Pirozzi, Inc. has suffered and will suffer damages and irreparable harm.

### SEVENTH CLAIM FOR RELIEF
**Indemnification**
***Against CardConnect Only***

116.     Plaintiffs incorporate and reallege the preceding paragraphs.

117.     Pursuant to Section 33.2 of  the Terms and Conditions, CardConnect agreed to indemnify and hold harmless Pirozzi, Inc. from and against all losses, liabilities, damages and expenses resulting from any breach of any warranty, covenant or agreement or any misrepresentation by CardConnect under the Agreement or arising out of their employees' gross negligence or willful misconduct in connection with this Agreement. (Exhibit A, p. 25).

118.     As described in the preceding paragraphs, CardConnect employees engaged in gross negligence by failing to use even a slight degree of care in handling the credit card funds received on behalf of Pirozzi, Inc.; inexplicably transferred money to account that did not belong to Pirozzi, Inc.; did not inform any Pirozzi, Inc. representatives of this development; and then lied

to Chef Pirozzi regarding its whereabouts, while also making repeated promises that the funds would be returned. As a result of this gross negligence, Pirozzi, Inc. has suffered damages and irreparable harm. Thus, CardConnect must indemnify Pirozzi, Inc. against all losses associated with CardConnect's gross negligence.

119.    As also described in the preceding paragraphs, CardConnect employees intentionally misled Pirozzi, Inc. into believing that the missing funds would be returned in order to maintain Pirozzi, Inc.'s business. Thus, CardConnect must indemnify Pirozzi, Inc. against all losses associated with CardConnect's willful misconduct.

**EIGHTH CLAIM FOR RELIEF**
**Negligence/Gross Negligence**
*Against All Defendants*

120.    Plaintiffs incorporate and reallege the preceding paragraphs.

121.    Defendants owed a duty to Pirozzi, Inc. because in collecting, storing, and processing its credit card receipts and data on internet-accessible computer systems, Defendants owed a duty to Pirozzi, Inc. to exercise reasonable care under the circumstances, which includes using reasonable measures to protect the information from the foreseeable risk of unauthorized third-party access, data breach, or loss or alteration. A reasonable entity in Defendants' position should foresee that a failure to use reasonable security measures to protect customer accounts can lead to serious financial consequences. Accordingly, in collecting, storing, and processing Pirozzi, Inc.'s credit card receipts and bank account data on internet-accessible computer systems, Defendants owed a duty to exercise reasonable care to protect Pirozzi, Inc. against unreasonable risks of harm arising out of those acts. Defendants, as the entities with custody of that information, were the only parties that realistically could ensure that its systems were sufficient to properly handle and protect the sensitive member information that Pirozzi, Inc. entrusted to Defendants.

122.     Defendants also owed a duty to Pirozzi, Inc. because Defendants were certain that Pirozzi, Inc. would suffer, and Pirozzi, Inc. did in fact suffer and will continue to suffer, monetary injury.  Defendants also owed a duty to Pirozzi, Inc. because there is a close connection between Defendants' conduct and Pirozzi, Inc.'s injuries insofar as Pirozzi, Inc. would not have been injured but for Defendants' negligence.

123.     Defendants also owed a duty to Pirozzi, Inc. because there is a strong public policy interest in safeguarding credit card and bank information, given that it is an essential service on which business owners and consumers must rely, as well as a strong public policy interest in preventing Defendants from behaving in such a reckless, careless, and negligent fashion and from shifting blame to others.

124.     Defendants further owed a duty to Pirozzi, Inc. because the burden on Defendants is minimal and the consequences to the community are positive as a result of imposing a duty on Defendants under these circumstances.

125.     Defendants also owes a duty because, upon information and belief, there is insurance available for this risk. Moreover, Fiserv, which reported annual revenues in excess of $5 billion, can afford any damages awarded by the trier of fact.

126.     Through their acts, omissions, concealments, and misrepresentations, Defendants failed to act with the care that a reasonably prudent person would exercise in the same or similar circumstances.

127.     Defendants were grossly negligent and reckless, failed to use even a slight degree of care, and acted with complete disregard for Pirozzi, Inc.'s rights.

128.     Without limitation, Defendants failed to institute appropriate protective measures to maintain the safety, security, and accuracy of Pirozzi, Inc.'s bank account information that

served as a conduit to its credit card receipts, to which it was entrusted. Further, Defendants failed to warn Pirozzi, Inc. of at least the following: (a) that Defendants have failed to enact appropriate measures to protect the safety, security, and accuracy of Pirozzi, Inc.'s funds and bank account information; (b) that in the absence of such measures, Defendants would permit unauthorized individuals to access Pirozzi, Inc.'s funds and change Defendants' records of Pirozzi, Inc.'s bank account information; (c) that Pirozzi, Inc. should independently take any protective measures to ensure the safety, security, and accuracy of its funds and bank account information; (d) that Pirozzi, Inc.'s funds and information has been, or was reasonably believed to have been, compromised.

129. Defendants' acts, omissions, concealments, and misrepresentations violate broad social duties that are separate and distinct from, and collateral to, any specific executory contractual promises Defendants made to Pirozzi, Inc. The duties violated by Defendants are in the nature of a tort because the relevant duties (e.g., the duties to act in a reasonable, non-negligent manner) arose regardless of any contract between Defendants and Pirozzi, Inc., and the Agreement is subject to rescission. Accordingly, the duties violated by Defendants are defined by the social policies embodied in the law of torts.

130. As a direct and proximate the result of Defendants' negligence, Pirozzi, Inc. has suffered and will suffer damages and irreparable harm.

131. Similarly, as a direct and proximate result of Defendants' negligence, Pirozzi Enterprises has suffered and will suffer damages and irreparable harm.

### NINTH CLAIM FOR RELIEF
**Promissory Estoppel**
*Against All Defendants*

132. Pirozzi, Inc. incorporates and realleges the preceding paragraphs.

133.     After alerting Defendants that Pirozzi, Inc.'s credit card receipts were no longer being properly transferred to Pirozzi, Inc.'s bank accounts, both CardConnect and Fiserv representatives made a series of promises that that the missing funds would be returned to Pirozzi, Inc., in full, without regard to the amount specified in the limitation-of-liability waiver.  In doing so, Defendants waived the terms of the limitation-of-liability.  Section 45.6 of the Terms and Conditions, which governs waiver, is devoid of any language requiring that a waiver of any provision be in writing.  Thus, the oral promises made by Defendants' representatives constituted a waiver of the limitation-of-liability provision and Defendants' promises to return the funds in full are enforceable.

134.     Those promises were reasonably relied on by Pirozzi, Inc. to its detriment, including when remaining a customer and allowing Defendants to continue to collect credit card receipts that it failed to transfer to Pirozzi, Inc. and to forego other measures to recover the missing funds.

135.     Defendants violated its promises to Pirozzi, Inc. by, among other things, repudiating its promises and not fulfilling them.

136.     As a direct and proximate result of Defendants' violation of their promises, Pirozzi, Inc. has suffered and will continue to suffer damages and harm.

<u>**TENTH CLAIM FOR RELIEF**</u>
**Money Had and Received**
*Against All Defendants*

137.     Plaintiffs incorporate and reallege the preceding paragraphs.

138.     Defendants received and benefitted from funds obtained from Pirozzi, Inc. to the detriment of Pirozzi, Inc.

139.     Such funds and assets rightfully belonged to Pirozzi, Inc.

140.    Under the principles of good conscience, Defendants should not be permitted to retain such funds and assets.

### ELEVENTH CLAIM FOR RELIEF
### Rescission of CardConnect Agreement
*Against CardConnect Only*

141.    Plaintiffs incorporate and reallege the preceding paragraphs.

142.    Pirozzi, Inc. may have the Agreement rescinded due to commercial impracticability and frustration of purpose because unforeseeable events not caused by Pirozzi, Inc. have altered the essential nature of the Agreement, and Pirozzi, Inc. has been unable to obtain its expected bargain from CardConnect.

143.    Pirozzi, Inc. may also have the Agreement rescinded due to CardConnect's breaches. The breaches are so material, willful, substantial, and fundamental that they have defeated the object of the parties in making the Agreement. These breaches have left Pirozzi, Inc. in a position substantially different from what the parties intended at the time they entered into the Agreement.

144.    Pirozzi, Inc. may have the Agreement rescinded because CardConnect fraudulently induced Pirozzi, Inc. to enter into the Agreement by misrepresenting to Pirozzi, Inc. its capabilities and intentions to perform in accordance with the Agreement, when in fact CardConnect lacked such capabilities and intentions. These representations were material to Pirozzi, Inc., Pirozzi, Inc. reasonably relied on them in deciding whether to enter into the Agreement, which did not disclaim reliance on these types of specific representations, and the falsity of CardConnect's representations was within CardConnect's peculiar knowledge and could not have been reasonably discovered by Pirozzi, Inc.

145. Pirozzi, Inc. has no adequate remedy at law. Accordingly, this Court should rescind the Agreement.

## TWELFTH CLAIM FOR RELIEF
### Aiding and Abetting the Commission of a Tort
*Against All Defendants*

146. Plaintiffs incorporate and reallege the preceding paragraphs.

147. To the extent that Defendants claim that Pirozzi, Inc. was a victim of an unknown third-party "fraudster," who was able to gain access to Defendants' systems and alter Pirozzi, Inc.'s bank account information in order to wrongfully transfer Pirozzi, Inc.'s credit card receipts to their wrongful possession, Defendants substantially assisted said fraudster in the commission of this fraud and conversion of Plaintiffs' assets.

148. Defendants employed knowingly weak security controls with reckless disregard for the security of Pirozzi, Inc.'s bank account information. As set forth above, Ms. Clark explained that Chef Pirozzi's accent served as her basis to confirm Chef Pirozzi's identity. Thus, Defendants' failure to provide adequate security controls enabled a third-party fraudster to gain access to Pirozzi, Inc.'s credit card receipts and execute the scheme to steal from Pirozzi, Inc.

149. As a direct and proximate result of Defendants' aiding and abetting the fraudster's tortious activity, Pirozzi, Inc. has suffered and will suffer damages and irreparable harm.

150. Similarly, as a direct and proximate result of Defendants' aiding and abetting the fraudster's tortious activity, Pirozzi Enterprises has suffered and will suffer damages and irreparable harm.

## THIRTEENTH CLAIM FOR RELIEF
### Declaratory Relief
*Against CardConnect Only*

151. Plaintiffs incorporate and reallege the preceding paragraphs.

152.     Genuine disputes exist between the parties concerning their rights under the CardConnect Agreement, including the meaning, enforceability, and applicability of the Agreement.  This Court's declarations of the parties' rights would resolve the legal relations of the parties to justiciable controversies.

153.     **CardConnect's Waiver of Exculpatory and Limitation-of-Liability Provisions.** Pirozzi, Inc. is entitled to a declaration that the exculpatory and limitation-of-liability provisions in the Agreement were waived by the conduct and statements of Defendants' employees, who repeatedly provided assurances and promises that the missing funds would be transferred to Pirozzi, Inc. accounts in full, without regard to any liability limit or exculpatory provision in the Agreement.  As set forth in preceding paragraphs, CardConnect failed to use even a slight degree of care in handling the credit card funds received on behalf of Pirozzi, Inc., inexplicably transferred money to account that did not belong to Pirozzi, Inc., did not inform any Pirozzi, Inc. representatives of this development, and then lied to Chef Pirozzi regarding its whereabouts while also making repeated promises that the funds would be returned.  Section 45.6 of the Terms and Conditions, which governs waiver, contemplates that CardConnect may waive any term and or condition of the Agreement, and is devoid of any requirement that a waiver be in writing.  Thus, by expressly and unambiguously promising that the funds at issue would be returned, and through Defendants' other acts and statements evidencing their knowing, voluntary, and intentional intent to waive the benefits of the exculpatory and limitation-of-liability provisions, Defendants waived those provisions.

154.     **Unenforceability of Exculpatory and Limitation-of-Liability Provisions (Contract Defenses).**  Pirozzi, Inc. is entitled to a declaration that the exculpatory and limitation-of-liability provisions in the Agreement are unenforceable because CardConnect has no right to

enforce the Agreement due to its uncured material breaches, fraudulent inducement, fraudulent performance, failure of consideration, commercial impracticability, and frustration of purpose.

155. **Unenforceability of Exculpatory and Limitation-of-Liability Provisions (Public Policy).**  Pirozzi, Inc. is entitled to a declaration that the exculpatory and limitation-of-liability provisions in the Agreement are unenforceable because they purport to allow CardConnect to exempt itself from liability for damages caused by its grossly negligent, intentional, tortious, or other conduct for which an exculpatory provision or a limitations-of-liability provision is against public policy.

156. **Unenforceability of Exculpatory and Limitation-of-Liability Provisions (Indefiniteness/No Expressed Intention to Relieve Negligence Liability).**  Pirozzi, Inc. is entitled to declaration that the exculpatory and limitation-of- liability provisions in the Agreement do not limit or exculpate CardConnect's liability for its negligent acts or omissions because those provisions do not unequivocally express the parties' intention to relieve CardConnect of liability for its own negligence.  CardConnect was the sole drafter of the Agreement, and any term in the Agreement, including its exculpatory and limitation-of-liability provisions, must be construed against CardConnect.

157. **Inapplicability of Limitation-of-Liability Provision to Claims Against Fiserv and Other Third Parties.**  Pirozzi, Inc. is entitled to a declaration that the limitation-of-liability provision in the Agreement does not apply to non-signatories of the Agreement.  Section 27.4 of the Terms and Conditions, which purports to be a limitation-of-liability provision, only limits "'our' cumulative liability for all losses, claims, suits, controversies, breaches or damages for any cause whatsoever…" (Exhibit A, p. 22). The Terms and Conditions define "our" as "servicers," which, in turn, is defined as a "processor," and "processor" is defined as the entity identified in the

Agreement, which solely is CardConnect. (Exhibit A, p. 41). The limitation-of-liability provision does not apply to Fiserv and other third parties.

**FOURTEENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
***Against CardConnect Only***

158. Plaintiffs incorporate and reallege the preceding paragraphs.

159. CardConnect has induced Pirozzi, Inc. to make payments to CardConnect as a result of CardConnect's unjust and unconscionable misconduct. Without limitation, CardConnect has continued to charge membership fees to Pirozzi, Inc., which were paid by Pirozzi, Inc., despite the fact that CardConnect no longer provides services to Pirozzi, Inc.

160. As a result of this misconduct, CardConnect has been, and will continue to be, unjustly enriched at Pirozzi, Inc.'s expense, and under circumstances that would make it unjust and inequitable for CardConnect to retain Pirozzi, Inc.'s payments.

161. Accordingly, equity and good conscience require that CardConnect make restitution to Pirozzi, Inc.

**JURY TRIAL DEMAND**

Plaintiffs request a trial by jury of all issues so triable.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court:

(i)     enter judgment in Plaintiffs' favor for all damages allowed by law—including, without limitation, statutory, compensatory, consequential, incidental, reliance, restitutionary, statutory, and punitive—in amounts to be determined at trial, but not less than $1,000,000;

(ii)     award Plaintiffs' their attorneys' fees, costs, disbursements, and the maximum prejudgment and post-judgment interest allowed by law;

(iii)     rescind the Agreement;

(iv)     issue a judicial declaration of the parties' rights;

(v)     issue an injunction to prevent harm from befalling Plaintiffs; and

(vi)     award any further relief that may be necessary to achieve justice.

Dated: April 1, 2022

BARCLAY DAMON LLP

By: */s/ Charles J. Nerko*
    Charles J. Nerko
    Benjamin Wilkinson (*pro hac vice* to be filed)
    Sarah A. O'Brien
1270 Avenue of the Americas, Suite 501
New York, NY 10020
212.784.5800
cnerko@barclaydamon.com
bwilkinson@barclaydamon.com
sobrien@barclaydamon.com

Of Counsel:

Majid Foroozandeh (*pro hac vice* to be filed)
LAW OFFICES OF FOROOZANDEH, APC
23461 South Pointe Drive, Suite 385
Laguna Hills, CA 92653
949.336.8505
majidf@foroozandeh-law.com

*Attorneys for Plaintiffs*
*Chef Alessandro Pirozzi, Inc. and*
*Pirozzi Enterprises, LLC*