| | |
|---|---|
| CHEF ALESSANDRO PIROZZI, INC. and PIROZZI ENTERPRISES, LLC | No. 2:22-cv-00902-DG-SIL |
| *Plaintiffs,* | |
| v. | **DEFENDANTS CARDCONNECT, LLC'S AND FISERV, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** |
| CARDCONNECT, LLC and FISERV, INC. | |
| *Defendants* | |

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................... 1

II.    Argument ............................................................................................................. 3

    A.    The Court should Dismiss Pirozzi Enterprises's Claims. ...................................... 4

    B.    The Court Should Dismiss Plaintiffs' Claims Against Fiserv Because Fiserv Is Not a Party to the Agreement ...................................................................... 5

    C.    The Claims Fail as a Matter of Law ...................................................................... 6

        1.    Pirozzi Has Failed to Plead the Requisite Elements for Breach of Contract. ...................................................................................... 6

        2.    The Majority of Plaintiffs' Remaining Claims Fail Because the Only Duties Involved Arise from the Agreement. ............................................... 8

        3.    The Remaining Claims Also Fail as a Matter of Law. ............................. 9

            i.    Breach of Contract/Promissory Estoppel Based on Online Notices. ...................................................................................... 9

            ii.    Fraud/Fraudulent Inducement ....................................................... 10

            iii.    Indemnification ............................................................................. 12

            iv.    Breach of Fiduciary Duty ............................................................... 12

            v.    Negligence .................................................................................... 13

            vi.    Money Had and Received ............................................................... 13

            vii.    Recission ...................................................................................... 13

            viii.    Aiding and Abetting the Commission of a Tort ............................... 14

    D.    Plaintiffs' Damages Are Limited to, at Most, $50,000.00 .................................... 15

III.    Conclusion ......................................................................................................... 18

84554448.6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*,
    908 N.Y.S.2d 654 (2010) ............................................................................................. 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 3, 4

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,
    679 F. Supp. 2d 474 (S.D.N.Y. 2010) ................................................................. 10

*Bell v. Twombly*,
    550 U.S. 554 (2007) ...................................................................................... 3, 4, 17

*Benex LC v. First Data Merch. Servs. Corp.*,
    2016 WL 1069657 (E.D.N.Y. Mar. 16, 2016) ...................................................... 9

*Bibicheff v. Chase Bank USA, N.A.*,
    2018 WL 4636817 (E.D.N.Y. Sept. 26, 2018) .................................................... 13

*Brinsights, LLC v. Charming Shoppes of Delaware, Inc.*,
    2008 WL 216969 (S.D.N.Y. Jan. 16, 2008) ....................................................... 10

*Burke v. Steinmann*,
    2004 WL 1117891 (S.D.N.Y. May 18, 2004) ..................................................... 14

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
    70 N.Y.2d 382 (1987) ........................................................................................... 9

*Cmty. Care Physicians, P.C. v. Domagalski*,
    2016 WL 1735501 (N.Y. City Ct. 2016) ............................................................ 10

*Cty. of Orange v. Grier*,
    817 N.Y.S.2d 146 (2006) ..................................................................................... 14

*El-Nahal v. FA Mgmt., Inc.*,
    5 N.Y.S.3d 201 (2015) ........................................................................................... 6

*EVEMeta, LLC v. Siemens Convergence Creators Corp.*,
    104 N.Y.S.3d 607 (2019) ..................................................................................... 16

*Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*,
    983 F. Supp. 403 (S.D.N.Y. 1997) ....................................................................... 8

*Golfo v. Kycia Assocs., Inc.*,
    845 N.Y.S.2d 122 (2007)........................................................................................17

*Hoeffner v. Orrick, Herrington & Sutcliffe LLP*,
    878 N.Y.S.2d 717 (2009)........................................................................................9

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
    548 N.E.2d 903 (1989)..........................................................................................12

*Jacobs Priv. Equity, LLC v. 450 Park LLC*,
    803 N.Y.S.2d 14 (2005)........................................................................................14

*Marino v. Dwyer-Berry Constr. Corp.*,
    193 A.D.2d 654 (N.Y. App. Div. 1993) ................................................................5

*Marte v. Graber*,
    924 N.Y.S.2d 720 (App. Term 2011) ..................................................................13

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    84 N.Y.2d 430 (1994) ..........................................................................................15

*Morgenroth v. Toll Bros.*,
    876 N.Y.S.2d 378 (N.Y. App. Div. 2009) ............................................................9

*Nolan v. Sam Fox Pub. Co.*,
    499 F.2d 1394 (2d Cir. 1974)..............................................................................14

*Pandisc Music Corp. v. Red Distribution, LLC*,
    2005 WL 646216 (S.D.N.Y. Mar. 18, 2005) ........................................................9

*Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*,
    883 N.Y.S.2d 486 (1st Dept. 2009) ....................................................................15

*Taylor Bldg. Mgmt., Inc. v. Glob. Payments Direct, Inc.*,
    866 N.Y.S.2d 96 (Sup. Ct. 2008)........................................................................12

*Torok v. Moore's Flatwork & Founds., LLC*,
    966 N.Y.S.2d 572 (N.Y. App. Div. 2013) ............................................................9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................1

Federal Rule of Civil Procedure 9(b)..........................................................................11

84554448.6

Defendants CardConnect, LLC and Fiserv, Inc. (collectively "Defendants") seek dismissal of Chef Alessandro Pirozzi, Inc.'s and Pirozzi Enterprises, LLC's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), respectfully showing the Court as follows:

## I. INTRODUCTION

On November 2, 2020, Chef Alessandro Pirozzi, Inc. ("Pirozzi")[1] entered into a Merchant Processing Application and Agreement ("MPAA") and its incorporated Program Guide (collectively, the "Agreement") with CardConnect, which enabled Pirozzi to accept payment cards from its customers. (*See* Am. Compl. Ex. A (ECF No. 23-1); Am. Compl. ¶ 14 (ECF No. 23).)[2]

Thereafter, Plaintiffs filed suit against CardConnect and Fiserv (who is not a party to the Agreement), alleging that beginning in August of 2021, Pirozzi stopped receiving deposits related to its customers' card payments. (Am. Compl. ¶ 23.) The Complaint weaves a confusing tale involving secret codes and ex-military personnel. (*Id.* ¶ 35.) But the truth is much simpler (and believable). No ex-military personnel engaged in an elaborate scheme to defraud Pirozzi of its funds. Instead, Pirozzi failed to maintain and observe the proper security protocols both common sense and the Agreement require. As a predictable result, and as CardConnect has repeatedly explained to Pirozzi, someone with access to Pirozzi's security protocol(s) changed the deposit account to divert the funds elsewhere. (*Id.* ¶ 40 ("Ms. Clark then disclosed the bank account

---

[1] The Amended Complaint has different defined terms for Chef Alessandro Pirozzi, Inc. and the restaurant it operates, Alessa by Chef Pirozzi, which are one in the same. (Am. Compl. at 1; *see also* Am. Compl. Ex. A at 1 (showing "Alessa" as a DBA for Chef Alessandro Pirozzi, Inc).) For clarity, this Motion to Dismiss refers to Pirozzi, Inc. rather than distinguishing between the entity and the restaurant.

[2] Only Pirozzi's funds are at issue. (*See* Section II.A.) Regardless, Plaintiff Pirozzi Enterprises, LLC d/b/a Salerno ("Pirozzi Enterprises") also entered into a nearly identical agreement on that same day. (Am. Compl. ¶ 15.)

associated with the [Pirozzi] Merchant Account Number had been changed to a Chase Bank account and that security information had also been changed by an unknown caller."); ¶ 29.)

Critically, the Agreement requires Pirozzi to maintain the security of its systems. (Program Guide §§ 5 (providing Pirozzi is responsible for maintaining security of its devices and outlining security requirements including restricting employee access and ensuring unauthorized access); 23.6 (providing CardConnect is not responsible for detecting errors in the Settlement Account number); 39.6 (providing Pirozzi is responsible for using "commercially reasonable efforts to maintain the security of [its] Systems").)

Notwithstanding Pirozzi's contractual responsibility to protect itself against such (purported) fraud, the Amended Complaint asserts *fourteen* causes of action on behalf of Pirozzi and Pirozzi Enterprises (whose funds are not at issue) against CardConnect and Fiserv (who is not a party to the Agreement).

84554448.6

This "kitchen sink" approach necessitates explanation in the following chart:

| Claim | Plaintiff | Defendant |
|---|---|---|
| I. Breach of Contract | Pirozzi, Inc. | CardConnect |
| II. Breach of Contract/Promissory Estoppel | Pirozzi, Inc. Pirozzi Enterprises | CardConnect Fiserv |
| III. Bailment | Pirozzi, Inc. | CardConnect Fiserv |
| IV. Fraud/Fraudulent Inducement | Pirozzi, Inc. | CardConnect Fiserv |
| V. Conversion | Pirozzi, Inc. | CardConnect Fiserv |
| VI. Breach of Fiduciary Duty | Pirozzi, Inc. | CardConnect Fiserv |
| VII. Indemnification | Pirozzi, Inc. | CardConnect |
| VIII. Negligence/Gross Negligence | Pirozzi, Inc. Pirozzi Enterprises | CardConnect Fiserv |
| IX. Promissory Estoppel | Pirozzi, Inc. | CardConnect Fiserv |
| X. Money Had and Received | Pirozzi, Inc. | CardConnect Fiserv |
| XI. Recission | Pirozzi, Inc. | CardConnect |
| XII. Aiding and Abetting the Commission of a Tort | Pirozzi, Inc. Pirozzi Enterprises | CardConnect Fiserv |
| XIII. Declaratory Relief | Pirozzi, Inc. | CardConnect |
| XIV. Unjust Enrichment | Pirozzi, Inc. | CardConnect |

## II.    ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell v. Twombly*, 550 U.S. 554, 570 (2007). A plaintiff must include "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. A complaint that asserts "labels and conclusions" or "a formulaic recitation of the elements of a cause

3

of action will not do." *Twombly*, 550 U.S. at 555. Nor can a complaint survive if it is based upon "naked assertion[s] devoid of further factual enhancement." *Id.* at 557. Further, a court should not consider legal conclusions in determining whether the complaint has stated a claim for relief. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted). As *Iqbal* explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678, 129.

Here, Plaintiffs allege fourteen causes of action for a simple breach-of-contract case. Yet even the breach-of-contract claim fails as a matter of law. Accordingly, this case should be dismissed in its entirety.

**A.      The Court should Dismiss Pirozzi Enterprises's Claims.**

The entirety of this dispute surrounds Plaintiffs' allegation that Pirozzi, Inc.'s funds were not deposited into its account. (Am. Compl. ¶ 23 ("On or about August 10. 2021, accounting professionals observed that CardConnect ceased making transfers to Pirozzi, Inc.'s account.").) Nonetheless, Plaintiffs attempt to shoehorn in claims by Pirozzi Enterprises on the basis that it *voluntarily* transferred funds to Pirozzi:

> Pirozzi Enterprises was also damaged by Defendants' misconduct by virtue of the fact that it was forced to transfer funds to Pirozzi, Inc., pay for Pirozzi, Inc.'s expenses and invoices, and take on additional debt as a result of Defendants' failure to properly transfer the funds belonging to Pirozzi, Inc.

(Am. Compl. ¶ 55.)

Even if this constitutes damage, the Complaint fails to plead the necessary elements of any of Pirozzi Enterprises' claims. First, Pirozzi Enterprises's Breach of Contract/Promissory Estoppel

4

claim – which relies on CardConnect and Fiserv's online privacy policies – fails to explain *how* CardConnect and/or Fiserv breached those policies as to *Pirozzi Enterprises*. (Am. Compl. ¶¶ 79-87.) The same is true of Pirozzi Enterprises's Negligence/Gross Negligence claim. (Am. Compl. ¶¶ 120-131.) Likewise, as explained below, Plaintiffs have failed to allege Defendants had any knowledge of or participation in the third-party fraudster's scheme so as to give raise to a claim for aiding and abetting. (Am. Compl. ¶¶ 146-150.)

### B. The Court Should Dismiss Plaintiffs' Claims Against Fiserv Because Fiserv Is Not a Party to the Agreement.

As explained below, each of Plaintiffs' claims arises out of the Agreement. And only a party to a contract may be sued for its breach. *See, e.g.*, *Marino v. Dwyer-Berry Constr. Corp.*, 193 A.D.2d 654, 655 (N.Y. App. Div. 1993) (dismissing complaint because plaintiff did not have a contractual relationship and was not in privity with the parties to the contract).[3]

As with their causes of action, Plaintiffs just hope something will stick against Fiserv. In that vein, Plaintiffs have strategically and summarily alleged:

> Upon information and belief, at all times mentioned herein, CardConnect utilized the services of Fiserv and its employees as a third party subcontractor and/or agent, and both parties acted within the course and scope of such agency, partnership, and each of the acts performed by each of the said co-defendants as hereinafter alleged were performed with the express or implied consent and authority of one another. According to CardConnect's website, "CardConnect is a payments platform of Fiserv." *See* https://cardconnect.com/company/about. Moreover, the services of CardConnect are subject to Firserv's Privacy Policy. Fiserv has exercised, or should have been exercising, control over CardConnect's activities and is vicariously liable for the harm caused herein by CardConnect, and independently liable for its own unlawful acts, omissions, concealments, and misrepresentations.

(Am. Compl. ¶ 7.) Significantly, these allegations are missing from the Original Complaint.

---

[3] The Agreement contains a New York choice-of-law clause: "Our Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regards to its choice of law provisions)." (Program Guide § 44.1.)

This is nothing more than artful pleading after Plaintiffs had the benefit of reading Defendants' first motion to dismiss. For example, Bonnie Clark, Travis Bellet, Delva, and Heather were suddenly transformed from the "CARDCONNECT management team" (Compl. ¶ 13),[4] to "the CardConnect and Fiserv management team" (Am. Compl. ¶ 36), and Mr. Bellet was transformed from a person "who represented that he was a 'Manager' of CARDCONNECT" (Compl. ¶ 25 (emphasis in original)), to "a manager of Fiserv." (Am. Compl. ¶ 46). The Court should disregard this thinly-veiled attempt to force Fiserv into litigation and should further question Plaintiffs' sudden changes to its factual allegations.

## C. The Claims Fail as a Matter of Law.

### 1. Pirozzi Has Failed to Plead the Requisite Elements for Breach of Contract.

Here, Pirozzi's breach-of-contract claim must be dismissed because it has failed to allege performance and breach. *El-Nahal v. FA Mgmt., Inc.*, 5 N.Y.S.3d 201, 202 (2015) (explaining performance and breach are essential elements). Pirozzi complains CardConnect failed to forward daily sales proceeds[5] and to implement proper security measures.[6] (Am. Compl. ¶¶ 72, 73.) But the Agreement expressly requires *Pirozzi* to secure its own account information:

> **Security of Information.** We will use commercially reasonable efforts to maintain the security of the Services and the Platform. You will use commercially reasonable efforts to maintain the security of Your Systems. Such steps by you will be taken at your sole cost and expense, and shall include, without limitation: (i) creating

---

[4] The Original Complaint also contained generalizations without any foundational factual allegations, such as "On behalf of CARDCONNECT and FISERV." (Compl. ¶ 15.)

[5] Notably, these proceeds are subject to offset for amounts owed (Agmt. §§ 23.2, 23.3) and can be held in reserve to mitigate risk (*id.* § 31.)

[6] Pirozzi also alleges, without any explanation or citation, that CardConnect failed to "comply with applicable laws." (Compl. ¶ 72.) This allegation plainly falls short of the pleading requirements as it does not give CardConnect adequate notice of the allegations at issue.

firewalls to protect against unauthorized access to Your Systems by your employees, contractors, Customers, or by any other person; and (ii) implementing reasonable protective techniques suggested by us. You further agree that you will be bound by and comply with all of our and all Card Organization security rules and regulations as they now exist or as each may be amended or supplemented from time to time. Notwithstanding the foregoing, the parties recognize that there is no guarantee or absolute security of information that is communicated over the internet.

(Program Guide § 39.6; s*ee also id.* § 5.) It further warns:

> You acknowledge and agree that transfers to and from the Settlement Account shall be based on the account number and routing number supplied by you. *We are not responsible for detecting errors in any Settlement Account information you provide*, including the account numbers and routing numbers, even if any of those numbers do not correspond to the actual account or financial institution identified by name.

. . . .

> **YOU ARE RESPONSIBLE FOR SECURING YOUR POS DEVICES AND FOR IMPLEMENTING APPROPRIATE CONTROLS TO PREVENT EMPLOYEES OR OTHERS FROM SUBMITTING CREDITS AND VOIDS THAT DO NOT REFLECT BONA FIDE RETURNS OR REIMBURSEMENTS OF PRIOR TRANSACTIONS.**

(Program Guide §§ 23.6 (emphasis added), 35.2 (emphasis in original), 7 ("YOU ARE RESPONSIBLE FOR SECURING YOUR POS DEVICES AND FOR [IMPLEMENTING] APPROPRIATE CONTROLS TO PREVENT EMPLOYEES OR OTHERS FROM SUBMITTING CREDITS AND VOIDS THAT DO NOT REFLECT BONA FIDE RETURNS OR REIMBURSEMENTS OF PRIOR TRANSACTIONS." (emphasis in original).) Accordingly, the Agreement makes clear the very contractual duty Pirozzi alleges CardConnect breached was not CardConnect's duty at all.[7] Rather, the Agreement expressly provided *Pirozzi* had an obligation to secure its own account information. And Pirozzi admits it failed to do so.

---

[7] For this reason, Pirozzi's allegation that CardConnect improperly continued "to charge membership fees for services not rendered" also fails. (Am. Compl. ¶ 73.)

84554448.6

Pirozzi admits its bank account information was changed by some third party who "would need to provide particular security information." (Am. Compl. ¶¶ 17, 29.) Pirozzi does not allege it did anything to investigate how the "particular security information" was compromised and, specifically, whether it investigated or attempted to remedy any security issues on its end. Instead, Pirozzi just points the finger at Defendants. Significantly, after the first unauthorized change, Pirozzi was on notice its information was compromised. Yet Pirozzi does not allege it did anything to change its "security information" or otherwise prevent the third-party fraudster from effectuating further changes. (*See generally id.*) Count I must therefore be dismissed.

### 2. The Majority of Plaintiffs' Remaining Claims Fail Because the Only Duties Involved Arise from the Agreement.

"Under New York law, it is well-settled that a breach of contract is not a tort unless the breach violates a legal duty independent of the contract." *Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*, 983 F. Supp. 403, 436 (S.D.N.Y. 1997). In fact, the District Court of California already held, "Plaintiff's tort claims relate to the Agreement. Indeed, many are directly grounded in the Agreement." (ECF No. 14 at 7 (interpreting the Original Complaint).) Accordingly, Plaintiffs' bailment, fraud, conversion, breach of fiduciary duty, negligence, unjust enrichment, and promissory estoppel claims must be dismissed as duplicative of the breach-of-contract claim because they all seek the same relief[8] for the same alleged wrong.[9] *Pandisc Music Corp. v. Red*

---

[8] (*Compare* Am. Compl. ¶¶ 78 ("has suffered and will suffer damages and irreparable harm), *with* 92 (same), *and* 102 (same), *and* 109 (same), *and* 115 (same), *and* 130 (same), *and* 131 (same), *and* 136 (same), *and* p. 31 (seeking "not less than $1,000,000").)

[9] (*Compare* Am. Compl. ¶¶ 72, 73 (alleging breach of contract for failure to transfer funds and inadequate security), *with* 89-91 (alleging bailment for failure to return funds), *and* 94 (alleging fraud based on representations regarding Defendants' security), *and* 16 (alleging CardConnect "represented that it would . . . safely and securely transfer the sales receipts . . . . Specifically, *Section 23.6 of the Terms and Conditions sets forth* . . . ." (emphasis added)), *and* 107 (alleging

*Distribution, LLC,* No. 04 CIV. 9365 (GEL), 2005 WL 646216, at *1 (S.D.N.Y. Mar. 18, 2005) (dismissing bailment and conversion claims as duplicative); *Torok v. Moore's Flatwork & Founds., LLC*, 966 N.Y.S.2d 572, 574 (N.Y. App. Div. 2013) (dismissing fraudulent misrepresentation claim as duplicative); *Benex LC v. First Data Merch. Servs. Corp.*, No. 14-CV-6393, 2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16, 2016) (dismissing conversion claim as duplicative); *Morgenroth v. Toll Bros.*, 876 N.Y.S.2d 378, 380 (N.Y. App. Div. 2009) (dismissing fiduciary duty claim because it must be "independent of the contract itself."); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987) (explaining breach of contract is not a tort "unless a legal duty independent of the contract itself has been violated."); *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 878 N.Y.S.2d 717, 719 (2009) (dismissing promissory estoppel and unjust enrichment as duplicative).

### 3. The Remaining Claims Also Fail as a Matter of Law.

#### i. Breach of Contract/Promissory Estoppel Based on Online Notices.

Plaintiffs allege Defendants' online privacy policies constitute "valid and binding contractual obligations" or, in the alternative, that they "are enforceable under principles of promissory estoppel because the promises contained in them were reasonably relied upon by Plaintiffs to their detriment." (Am. Compl. ¶ 82.) But Plaintiffs have completely failed to plead the consideration and mutual assent required to show formation of a contract based on the policies.

---

conversion for failure to return funds), *and* 114 (alleging breach of fiduciary duty for transferring the funds to "an unknown party" and changing the bank account), *and* 128 (alleging negligence due to security measures), *and* 133 (alleging promissory estoppel for failing to return the funds), *and* 159 (alleging CardConnect induced Pirozzi to make payments "as a result" of its "unjust and unconscionable misconduct").)

9

*Cmty. Care Physicians, P.C. v. Domagalski*, No. CV–613–15/CO, 2016 WL 1735501 (N.Y. City Ct. 2016) (finding no express or implied contract because there was no "mutual assent"). And promissory estoppel cannot apply because, despite their conclusory allegation of reliance, Plaintiffs make no allegation they were ever aware of the policies prior to filing their Amended Complaint. *Brinsights, LLC v. Charming Shoppes of Delaware, Inc.*, No. 06 CIV. 1745 CM, 2008 WL 216969, at *5 (S.D.N.Y. Jan. 16, 2008) ("Under New York law, promissory estoppel has three elements: (1) a clear and unambiguous promise, (2) a reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained by the party asserting the estoppel by reason of the reliance."). In fact, Plaintiffs' Original Complaint makes no mention of them. (*See* Compl.) Even so, the Agreement expressly "supersedes any previous agreements and understandings" (Agmt. § 45.6.), which renders any "reliance" on the privacy policies unreasonable. *Brinsights,* 2008 WL 216969 at *6 (finding reliance on oral statements that contradicted the parties' agreement unreasonable).

### ii.       Fraud/Fraudulent Inducement

To state a claim for fraud, Pirozzi must allege: "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010). In addition, Pirozzi must also plead fraud with particularity under Rule 9(b) by: "(1) detail[ing] the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify[ing] the speaker, (3) stat[ing] where and when the statements (or omissions) were made, and (4) explain[ing] why the statements (or omissions) are fraudulent." *Id.* The Amended Complaint falls short.

10

Pirozzi alleges Defendants: (1) misrepresented their security procedures; (2) provided contradictory reasons for the missing funds; and (3) advised Pirozzi the funds would be returned. (Am. Compl. ¶ 94.) None of these is sufficient.

First, Pirozzi has failed to plead the alleged misrepresentations about Defendants' security procedures with the requisite particularity. The Complaint states, in its entirety:

> CardConnect represented that it would safely and securely maintain the credit card sale technology used by Pirozzi, Inc. and safely and securely transfer the sales receipts of Pirozzi, Inc.'s business to the correct Bank of America accounts maintained by Pirozzi, Inc. Specifically, Section 23.6 of the Terms and Conditions sets forth that transfer of funds from CardConnect to Pirozzi, Inc. "shall be based on the account number and routing number supplied by you [Pirozzi, Inc.]" (Exhibit A, p. 21).
> . . . .
> Pirozzi, Inc. entered into the Agreement based on the representations by CardConnect regarding its capabilities and intentions to perform in accordance with the Agreement, including the specific representations concerning the sufficiency of Defendants' security controls, including that any transfer of funds for Pirozzi, Inc. shall be made only to an account number and routing number supplied by Pirozzi, Inc. These representations were material to Pirozzi, Inc., and Pirozzi, Inc. relied on them in deciding whether to enter into the Agreement. Accordingly, Pirozzi, Inc. relied upon the actions, statements, and promises of CardConnect for the security of all of Alessa and Salerno's credit card transactions, and then to transfer said receipts to the proper Pirozzi, Inc. bank account.

(*See* Am. Compl. ¶¶ 16, 20.) Not only do these allegations expressly *rely on the Agreement* (*see section* II.C.2), they come nowhere near the particularity that is required. In addition, Pirozzi contradicts its own reliance by alleging "Defendants have a well-known history of . . . fail[ing] to adequately safeguard the information." (Am. Compl. ¶ 59.)

Second, Pirozzi has failed to plead fraud due to the "contradictory and misleading reasons regarding why the funds . . . were not transferred" because the "misrepresentations" cited are not contradictory. (Am. Compl. ¶ 94.) In particular, Pirozzi claims fraud because he (allegedly) was informed that the funds were missing due to a "compromised bank account" and then was later

informed that the funds were transferred to an "entirely different bank." (*Id.*) Even if true, these statements are not contradictory and therefore cannot form the basis for fraud.

Finally, Pirozzi claims he relied on the alleged representations "that the missing funds would be returned" when entering into the Agreement – but these supposed representations came *after* its execution. (Am. Compl. ¶ 94.) The fraud claim must therefore be dismissed.

### iii.        Indemnification

The indemnification claim fails because the provision does not apply to intra-party claims.[10] *See Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (1989). Regardless, the Agreement limits CardConnect's obligation to indemnify Pirozzi, Inc. to situations of "gross negligence or willful misconduct." (Agmt. § 33.2) Plaintiffs have not pled negligence – let alone gross negligence or willful misconduct.

### iv.        Breach of Fiduciary Duty

Pirozzi contends it had "a special relationship" with CardConnect *and* Fiserv because they provided processing services to Pirozzi. (Am. Compl. ¶ 111.) But the law is clear that a processor is not a fiduciary of a merchant. *See also Taylor Bldg. Mgmt., Inc. v. Glob. Payments Direct, Inc.*, 866 N.Y.S.2d 96 (Sup. Ct. 2008) (dismissing claim for failure to "plead any facts to demonstrate that the relationship between the parties was one of trust and confidence and not a straightforward business transaction between a credit card processor and a merchant.").

---

[10] Should it apply, *Pirozzi* must indemnify CardConnect under Section 33.1 for the costs CardConnect has incurred in responding to this situation, which was caused by Pirozzi's failure to protect its information as required by the Agreement.

### v.       Negligence

In addition to failing to allege a non-contractual duty, the negligence claim is barred by the economic loss doctrine. "There is a longstanding New York rule . . . that economic loss is not recoverable under a theory of negligence", absent the alleged negligence resulting in any personal injury or property damage. *Bibicheff v. Chase Bank USA, N.A.*, No. 217CV4679DRHAYS, 2018 WL 4636817, at *4 (E.D.N.Y. Sept. 26, 2018). Here, Plaintiffs seek only alleged economic loss which is not the consequence of personal injury or property damage.

### vi.       Money Had and Received

Under New York law, an action for money had and received sounds in quasi contract "and arises when, *in the absence of an agreement*, one party possesses money that in equity and good conscience it ought not retain." *Marte v. Graber*, 924 N.Y.S.2d 720, 721 (App. Term 2011) (emphasis added). Here, the express agreement between the parties precludes Pirozzi's claim for money had and received. *Id.* (holding "since there was an express agreement between the parties, plaintiff has failed to set forth a viable cause of action for money had and received.").

### vii.       Recission

Recission is:

> [A]n extraordinary remedy which should not be granted whenever there is only an inconsequential breach of the contract. Rather, before rescission will be permitted the breach must be found to be 'material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.

*Nolan v. Sam Fox Pub. Co.*, 499 F.2d 1394, 1397 (2d Cir. 1974). Although courts will rescind agreements when *no* payments were made, the Second Circuit has affirmed a decision refusing to rescind a contract when 74% of the amounts due were not paid due to "negligence." *Id.* Here, Pirozzi *admits* he has received deposits under the Agreement: (1) "From November of 2020 to

August of 2021, CardConnect regularly transferred funds to Pirozzi, Inc.'s designated Bank of America bank account" (Am. Compl. ¶ 21); (2) "CardConnect and Fiserv . . . released funds in the amount of approximately $427,000 in or around October of 2021" (Am. Compl. ¶ 52).

Pirozzi has simply failed to plead circumstances that rise to the level necessary for rescission. *Burke v. Steinmann*, No. 03 CIV. 1390 (GEL), 2004 WL 1117891, at *9 (S.D.N.Y. May 18, 2004) (frustration of purpose only applies when an unforeseen event "destroys" the reasons for the contract); *Jacobs Priv. Equity, LLC v. 450 Park LLC*, 803 N.Y.S.2d 14, 15 (2005) (breach must substantially defeat the contract's purpose); *see generally Am. Compl.* (failing to allege with particularity any misrepresentations made *prior to* entering into the Agreement).

In addition, "[t]he effect of rescission is to declare the contract void from its inception." *Cty. of Orange v. Grier*, 817 N.Y.S.2d 146, 147 (2006). Yet Pirozzi's *very first* count is for breach of contract. If the contract is rescinded, CardConnect had no obligation to process the transactions or deposit the funds and Plaintiffs' claims must fail.

### viii.     Aiding and Abetting the Commission of a Tort

Plaintiffs allege "[t]o the extent that Defendants claim that Pirozzi, Inc. was a victim of an unknown third-party 'fraudster' . . . Defendants substantially assisted said fraudster in the commission of this fraud and conversion of Plaintiffs' assets." (Am. Compl. ¶ 147.) This claim fails because Plaintiffs have not (and cannot) plead that Defendants had knowledge of (rather than being a victim of) the third-party's fraud or how Defendants allegedly "assisted said fraudster." *Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*, 883 N.Y.S.2d 486, 489 (1st Dept. 2009).

84554448.6

**D.    Plaintiffs' Damages Are Limited to, at Most, $50,000.00.**

The Court should dismiss this action in its entirety for the reasons discussed above. Should the Court not do so, at a minimum, the Court should significantly limit the recoverable damages pursuant to the terms of the Agreement.

Simply by retaining a different attorney, Plaintiffs' purported damages have skyrocketed from an out-of-pocket loss of $302,601.64 (Compl. p. 16), to "not less than $1,000,000." (Am. Compl. p. 31). Plaintiffs, however, cannot recover "consequential, incidental, reliance, restitutionary, . . . and punitive damages"[11] (Am. Compl. p. 31), as the Agreement expressly provides that such damages are not recoverable:

> IN NO EVENT SHALL WE OR OUR AFFILIATES OR ANY OF OUR OR THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS, BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER ANY PARTY OR ANY ENTITY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(Program Guide § 27.3; *see also* Program Guide p. 3 ("**The Agreement limits our liability to you.** For a detailed description of the limitation of liability see Section 27, 37.3, and 39.10 of the Card General Terms" (emphasis in original)).) Under New York law, such limitation-of-liability provisions are valid and enforceable. *See Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994) ("A limitation on liability provision in a contract represents the parties'

---

[11] Plaintiffs also claim unnamed "statutory" damages, which are likewise not recoverable because Plaintiffs have not asserted any claim for statutory violations. (Am. Compl. p. 31.)

Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.").

Likewise, Plaintiffs seek attorneys' fees. (Am. Compl. p. 32.) But attorneys' fees are not recoverable unless provided for by statute or contract. *EVEMeta, LLC v. Siemens Convergence Creators Corp.*, 104 N.Y.S.3d 607, 610 (2019) (dismissing claim for attorneys' fees because "Plaintiff cites no statute or contract provision that entitles it to attorneys' fees"). And, here, Plaintiffs have failed to cite to any provision in the Agreement or any statute entitling them to attorneys' fees. (*See* Am. Compl.)

In addition, Plaintiffs' claims must be dismissed to the extent they seek damages in excess of the lesser of $50,000.00 or twelve months' processing fees as limited by the terms of the Program Guide:

> NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY (INCLUDING BUT NOT LIMITED TO SECTIONS 33 or 28.5), OUR CUMULATIVE LIABILITY FOR ALL LOSSES, CLAIMS, SUITS, CONTROVERSIES, BREACHES OR DAMAGES FOR ANY CAUSE WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, THOSE ARISING OUT OF OR RELATED TO THIS AGREEMENT), REGARDLESS OF THE FORM OF ACTION OR LEGAL THEORY, SHALL NOT EXCEED, (I) $50,000; OR (II) THE AMOUNT OF FEES RECEIVED BY US PURSUANT TO THIS AGREEMENT FOR SERVICES PERFORMED IN THE IMMEDIATELY PRECEDING 12 MONTHS, WHICHEVER IS LESS.

(Program Guide § 27.4.) As such, Plaintiffs' request for damages in excess of $1,000,000.00, plus legal fees, plus "consequential, incidental, reliance, restitutionary, . . . and punitive damages" blatantly ignores the Agreement's express terms, which bar Plaintiffs from recovering damages in excess of the foregoing. And Plaintiffs' attempts to avoid these provisions fail.

First, Plaintiffs claim CardConnect waived the provisions by allegedly stating the funds would be returned. (Am. Compl. ¶ 153.) But New York law clarifies that waiver must be

"voluntary and intentional" and is "not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence." *Golfo v. Kycia Assocs., Inc.*, 845 N.Y.S.2d 122, 124 (2007). Here, Plaintiffs' allegations that CardConnect employees – in the course of dealing with an upset customer complaining about missing funds – purportedly represented the funds would be returned cannot be said to be "voluntary and intentional" on the employees' part – let alone CardConnect's. And the Agreement expressly precludes modification absent "*written* notice." (Agmt. § 45.7 (emphasis added).)

Second, Plaintiffs contend the provisions are unenforceable due to "uncured material breaches, fraudulent inducement, fraudulent performance, failure of consideration, commercial impracticability, and frustration of purpose." (Am. Compl. ¶ 154.) This legal conclusion laundry list, without support, does not satisfy the federal pleading standards. *Bell v. Twombly*, 550 U.S. 554, 557 (2007) (claims cannot survive if based upon "naked assertion[s] devoid of further factual enhancement.").

Third, Plaintiffs argue Section 27.4 is against public policy because it exempts grossly negligent and intentional conduct. (Am. Compl. ¶ 155.) But "[g]ross negligence, when invoked to pierce a contractual limitation of liability, must smack of intentional wrongdoing." *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 908 N.Y.S.2d 654, 656 (2010). Here, Plaintiffs cannot plead negligence and do not allege conduct sufficient to rise to the level of "intentional wrongdoing."

Fourth, Plaintiffs contend the provisions are unenforceable because they do not express an intention to disclaim negligent acts. (Am. Compl. ¶ 156.) This is incorrect. Section 27.3 expressly refers to "any theory or tort" and Section 27.4 states "regardless of the form of action or legal theory."

Finally, Plaintiff claims Section 27.4 does not apply to Fiserv. (Am. Compl. ¶ 157.) But

17

the Central District of California has already applied provisions of the Agreement to Fiserv, which is clearly a third-party beneficiary. (ECF No. 14 at 7.)

## III.  CONCLUSION

Plaintiffs have alleged *fourteen* causes of action for a simple breach of contract case, but all of these claims lack merit. The Court should grant this motion and dismiss Plaintiffs claims in their entirety.

Dated:  August 5, 2022

POLSINELLI PC

John W. Peterson (#5394200)
401 Commerce Street, Suite 900
Nashville, TN  37219
Phone: (615) 259-1510
Fax: (615) 259-1573
jpeterson@polsinelli.com

*Attorney for Defendants*

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via ECF and electronic mail on all counsel of record this 5th day of August, 2022.

*/s/ John W. Peterson*

*Attorney for Defendants*