UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CHEF ALESSANDRO PIROZZI, INC.                     No. 22 Civ. 902 (DG) (SIL)
and PIROZZI ENTERPRISES, LLC,

                  *Plaintiffs*,

      -against-

CARDCONNECT, LLC
and FISERV, INC.,

                  *Defendants*.

_____


**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Charles J. Nerko
Benjamin Wilkinson
Sarah A. O'Brien
BARCLAY DAMON LLP
1270 Avenue of the Americas, Suite 501
New York, NY 10020
212.784.5800
cnerko@barclaydamon.com
bwilkinson@barclaydamon.com
sobrien@barclaydamon.com

Of Counsel:

Majid Foroozandeh (*pro hac vice* to be filed)
LAW OFFICES OF FOROOZANDEH, APC
23461 South Pointe Drive, Suite 385
Laguna Hills, CA 92653
949.336.8505
majidf@foroozandeh-law.com


*Attorneys for Plaintiffs
Chef Alessandro Pirozzi, Inc. and
Pirozzi Enterprises, LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………… 1

ARGUMENT……………………………………………………………………... 2

I.  PLAINTIFFS ADEQUATELY STATE CLAIMS AGAINST FISERV, INC…. 2

   A.  Plaintiffs allege that Fiserv, Inc. is liable for breaches of its own promises and tortious acts………………………………………………………………… 2

   B.  Plaintiffs allege Fiserv, Inc.'s liability under agency theory…………………… 2

II.  PLAINTIFFS ADEQUATELY PLED THEIR CLAIMS………………………….. 3

   A.  Breach of Contract / Promissory Estoppel……………………………………. 3
     i.  Breach of Privacy Policies……………………………………………. 6
     ii. Pirozzi Enterprises……………………………………………………. 7
   B.  Bailment………………………………………………………………………. 8
   C.  Conversion……………………………………………………………………. 8
   D.  Fraud / fraud in the inducement……………………………………………… 9
   E.  Breach of fiduciary duty……………………………………………………… 11
   F.  Indemnification……………………………………………………………….. 12
   G.  Negligence……………………………………………………………………. 13
   H.  Promissory Estoppel………………………………………………………….. 15
   I.  Money had and Received……………………………………………………... 17
   J.  Rescission…………………………………………………………………….. 18
   K.  Aiding and Abetting the Commission of a Tort……………………………… 20
   L.  Pirozzi, Inc. sufficiently pleaded a claim for a declaratory judgment regarding the exculpatory clause…………………………………………………………… 21
     i.  The limitation of liability provision does not apply to Plaintiffs' claims against Defendants for breach of the privacy policies……………………….. 21
     ii. Defendants' representatives waived the limitation of liability provision…….. 21
   M.  Unjust Enrichment……………………………………………………………. 24

CONCLUSION…………………………………………………………………… 25

**TABLE OF AUTHORITIES**

**Cases**                                                                      **Page(s)**

*Allied Ir. Banks, P.L.C. v. Bank of Am., N.A.,*
2006 U.S. Dist. LEXIS 4270, at *43 (S.D.N.Y. Jan. 31, 2006)……………….… 23

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.,*
456 U.S. 556, 566 (1982)……………………………………………………... 2, 3

*Assured Guar. (UK) LTD. v. J.P. Morgan Inv. Mgmt. Inc.,*
80 A.D.3d 293, 306 (1st Dep't 2010), aff'd, 18 N.Y.3d 341 (2011)…………….. 15

*Baidu, Inc. v. Register.com, Inc.,*
760 F. Supp. 2d 312, 317 (S.D.N.Y. 2010)…………………………………… 23

*Basu v. Alphabet Mgt. LLC,*
127 A.D.3d 450 (1st Dep't 2015)……………………………………………... 25

*Bessemer Sys. FCU v. Fiserv Sols., LLC,*
472 F. Supp. 3d 142 (W.D. Pa. 2020)………………………………………… 13; 23

*Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.,*
199 N.Y. 268, 286 (1910)……………………………………………………... 18

*Citibank, N.A. v. Nyland (CF8) Ltd.,*
878 F.2d 620, 624 (2d Cir. 1989)……………………………………………... 2

*Condor Funding, LLC v. 176 Broadway Owners Corp.,*
147 A.D.3d 409, 411 (1st Dep't 2017)……………………………..……… 22

*Connecticut N.Y. Light. Co. v. Manos Bus. Mgt. Co., Inc.,*
171 A.D.3d 698, 699 (2d Dep't 2019)………………………………………... 8, 9

*Copper Basin FCU v. Fiserv Sols., Inc.,*
2013 WL 3421916, *4-5 (Tenn. Ct. App. July 3, 2013)……………………….. 13

*Daly v. Metro. Life Ins. Co.,*
4 Misc. 3d 887, 893 (Sup. Ct. N.Y. Cnty. 2004)…………………………… 14

*Dice v. Inwood Hills Condo.,*
237 A.D.2d 403, 404 (1st Dep't 1997)………………………………………… 22

*Dong Wook Park v. Michael Parke Dori Grp., Inc.,*
12 Misc.3d 1182(A) (Sup. Ct. Nassau Cnty. 2006)……………………………. 18

*GM Corp. v. Villa Marin Chevrolet,*
    2000 U.S. Dist. LEXIS 2772, *1 (E.D.N.Y. 2000)………………………………… 20

*Goel v. Ramachandran,*
    111 A.D.3d 783, 789-790 (3d Dep't. 2012)…………………………………….... 17

*Goldberg v. Pace Univ.,*
    535 F. Supp. 3d 180, 199 (S.D.N.Y. 2021)……………………………………… 16

*Goldman v. Simon Property Group, Inc.,*
    58 A.D.3d 208 (2d Dep't 2008)……………………………………………….... 18

*Helprin v. Harcourt, Inc.,*
    277 F. Supp. 2d 327, 339 (S.D.N.Y. 2003)……………………………………… 19, 20

*Hoffmann v. Major Model Mgmt.,*
    2022 U.S. Dist. LEXIS 60752, *10-11 (S.D.N.Y. 2022)………………………… 14

*Hooper Associates, Ltd. v. AGS Computers, Inc.,*
    74 N.Y.2d 487 (1989)…………………………………………………………… 12, 13

*Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.,*
    676 F. Supp. 2d 100, 115 (E.D.N.Y. 2009)……………………………………… 16

*Italian & French Wine Co. v. Negociants U.S.A.,*
    842 F. Supp. 693, 702 (W.D.N.Y. 1993)………………………………………... 23

*Jo Ann Homes at Bellmore, Inc. v. Dworetz,*
    25 N.Y.2d 112, 119……………………………………………………………... 10

*John v. Whole Foods Mkt. Grp., Inc.,*
    858 F.3d 732, 736 (2d Cir. 2017)………………………………………………... 7

*Jones v. Com. Bancorp, Inc.,*
    2006 U.S. Dist. LEXIS 32067, at *2 (S.D.N.Y. May 23, 2006)…………………. 14

*Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.,*
    2003 U.S. Dist. LEXIS 5182 *9 (S.D.N.Y. Apr. 1, 2003)………………………. 23

*Kalinkina v. Martino Cartier Enters., LLC,*
    2017 U.S. Dist. LEXIS 95670, *10-11 (S.D.N.Y. 2017)………………………... 23

*Kalisch-Jarcho v. City of NY,*
    58 N.Y.2d 377, 386-386 (1983)………………………………………………… 23

*Kimmell v. Schaefer*,
    89 N.Y.2d 257, 264 (1996)……………………………………………………… 12

*Koch v. Greenberg*,
    626 F. App'x 335, 338, 340 (2d Cir. 2015)……………………………………… 23

*Korff v. Corbett*,
    18 A.D.3d 248, 251 (1st Dep't 2005)……………………………………………… 24, 25

*Leibowitz v. Cornell Univ.*,
    584 F.3d 487, 507 (2d Cir. 2009)………………………………………………... 6

*Marini v. Adamo*,
    995 F. Supp. 2d 155, 204 (E.D.N.Y. 2014)……………………………………… 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC*,
    19 A.D.3d 273, 275 (1st Dep't 2005)……………………………………………… 19

*Pivar v. Graduate Sch. Of Figurative Art of the N.Y. Acad. Of Art*,
    290 A.D.3d 212, 212-13 (1st Dep't 2002)……………………………………… 8

*Rekor Sys. v. Loughlin*,
    2020 U.S. Dist. LEXIS 219768, *15 (S.D.N.Y. 2020)………………………… 20

*Rudman v. Cowles Comm'ns, Inc.*,
    30 N.Y.2d 1, 9 (1972)……………………………………………………………… 10

*Sabby Healthcare Master Fund Ltd. v. Microbot Med. Inc.*,
    180 A.D.3d 529, 531 (1st Dep't 2020)…………………………………………... 19

*Sabre Intl. Sec., Ltd. v. Vulcan Capital Mgt., Inc.*,
    95 A.D.3d 434, 439 (2d Dep't. 2012)…………………………………………… 18

*Sackin v. TransPerfect Glob., Inc.*,
    278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017)……………………………………… 15

*Salisbury v. Salisbury*,
    175 A.D.2d 462, 463 (3d Dep't 1991)…………………………………………... 17

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540, 551 (1992)……………………………………………………… 8, 11

*Steed Fin. LDC v. LASER Advisers, Inc.*,
    258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003)……………………………………… 20

*Tillage Commodities Fund, L.P. v. SS&C Techs., Inc.*,
    58 N.Y.S.3d 28, 30 (App. Div. 2017)…………………………………………… 13, 14

*Toretto v. Donnelley Fin. Sols., Inc.*,
    2022 U.S. Dist. LEXIS 20558, at *12 (S.D.N.Y. Feb. 4, 2022)………………… 13, 15

*Wall v. CSX Transp., Inc.*,
    471 F.3d 410, 415-16 (2d Cir. 2006)………………………………………….. 9

*Wallace v. Health Quest Sys.*,
    2021 U.S. Dist. LEXIS 54557, *27-28 (S.D.N.Y. 2021)……………………... 6, 7

*Wyle Inc. v. ITT Corp.*,
    130 A.D.3d 438, 440 (1st Dep't 2015)………………………………………... 10

## PRELIMINARY STATEMENT

Chef Alessandro Pirozzi is a first-generation American operating two renowned Italian restaurants in southern California. Like most restaurateurs, the lifeblood of his success is the collection and processing of credit-card payments for his culinary creations. He cannot do this himself. So he relies—as thousands of small businesses do—on third-party processors such as Fiserv and CardConnect, Fiserv's wholly owned subsidiary.

These processors have the duty to collect credit-card payments made by Plaintiffs' customers and deposit funds into Plaintiffs' accounts. They also have the duty to maintain the security of their electronic services and the platform on which they perform them.

From November 2020 to August 2021, Defendants discharged this duty. But in August 2021, they suddenly stopped depositing funds into Plaintiffs' accounts. They did not explain why and dodged Plaintiffs' efforts to get to the bottom of the matter. In their Amended Complaint, Plaintiffs' plead that one of two things happened: either Defendants kept Plaintiffs' funds for themselves, or they failed to properly safeguard the funds and gave them to unauthorized third party. Defendants argue, on the other hand, that Plaintiffs' Complaint should be dismissed—or that Plaintiffs should be limited to a tiny fraction of their $1,000,000 in losses—speculating that whatever diversion happened was Plaintiffs' own fault. Not so. Defendants unsupported speculation about what happened to the stolen funds advances, at best, a disputed, fact-based defense that defendants may hope to establish later on. It is not a reason to dismiss the case today.

Plaintiffs' position is straightforward. Taken as true, the factual allegations of the Amended Complaint state plausible claims in both contract and tort. In addition to Plaintiffs' claims under the Merchant Processing Application and Agreement (the "Agreement") and Defendants' written privacy policies, Plaintiffs have adequately pleaded tort claims, including claims for bailment,

conversion, fraud, and negligence. These tort claims are not duplicative because, as discussed below, they exist independently of the Agreement and privacy policies. Defendants' motion should be denied, and the parties allows to test their claims and defenses in discovery.

## ARGUMENT

## I. PLAINTIFFS ADEQUATELY STATE CLAIMS AGAINST FISERV, INC.

Defendants argue that Fiserv should be dismissed from this case because it was not a signatory to the Agreement with Pirozzi, Inc. Defendants' argument disregards the allegations of Fiserv, Inc.'s own misconduct.

### A. Plaintiffs allege that Fiserv, Inc. is liable for breaches of its own promises and tortious acts.

CardConnect is a wholly owned subsidiary of Fiserv. (Dkt. 23, ¶¶ 5). Fiserv's employees participated in the harm that befell Plaintiffs. The Amended Complaint alleges, for example, Travis Bellet, a Fiserv employee (*see* Mr. Bellet's LinkedIn page at https://www.linkedin.com/in/travis-bellet-793261123), falsely promised to return the missing funds to Pirozzi, Inc. (Dkt. 23, ¶¶ 46-50). The operative pleading further alleges that Fiserv breached its privacy notice which, on its face, applies to the activities of its subsidiaries (i.e., CardConnect). (Dkt. 23, ¶¶ 5, 81). Accordingly, Plaintiffs have stated claims against Fiserv based on its own involvement in the events at issue.

### B. Plaintiffs allege Fiserv, Inc.'s liability under agency theory.

In addition to Fiserv being liable to Plaintiffs for its own misconduct, Fiserv is also liable under agency theory because CardConnect and Fiserv acted with apparent authority on behalf of one another. It is well "established…that a principal is liable to third parties for the acts of an agent operating within the scope of his real or apparent authority." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F.2d 620, 624 (2d Cir. 1989) (citation omitted); *see generally Am. Soc'y of Mech. Eng'rs*

*v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982) ("Under an apparent authority theory, '[liability] is based upon the fact that the agent's position facilitates the consummation of the fraud."). According to CardConnect's own website, "CardConnect is a payments platform of Fiserv." *See* https://cardconnect.com/company/about (Dkt. 23, ¶ 7). Defendants' motion ignores these facts and instead focuses chiefly on the differences between the initial Complaint (which is no longer operative) and the Amended Complaint (which is based on further factual investigation and now governs). These differences are beside the point; the operative Amended Complaint adequately alleges Fiserv, Inc.'s liability for its own direct acts as well as under an agency theory.

## II. PLAINTIFFS ADEQUATELY PLED THEIR CLAIMS

### A. Breach of Contract / Promissory Estoppel

Defendants wrongfully assert that Pirozzi, Inc. failed to allege the requisite elements of Pirozzi, Inc.'s breach of contract claim against CardConnect, namely, the elements of performance and breach. *See* MTD, p. 6. For the reasons that follow, Pirozzi, Inc. has more than sufficiently stated a claim for breach of the Merchant Processing Agreement.

Specifically, Pirozzi, Inc. alleges its sufficient performance of the Agreement: "Pirozzi, Inc. has duly performed all obligations and satisfied all conditions required of it under the Agreement, except for those that were waived or excused by CardConnect." (Dkt. 23, ¶ 71). Pirozzi, Inc. also alleges that CardConnect's failure to transfer credit card receipts owed to Pirozzi, Inc., failure to comply with applicable laws as required by Section 45.2 of the Agreement, failure to provide Pirozzi, Inc. with benefits of the Agreement, failure to properly safeguard the payments owed to Pirozzi, Inc. by implementing inadequate security controls and continuing to charge membership fees for services not rendered all constitute a breach of the Agreement. (Dkt. 23, ¶¶

71-73). Thus, Pirozzi, Inc. adequately pleads the performance and breach elements of its contract claim.

In response to these well-pleaded factual allegations, which must be accepted as true, Defendants cobble together a sharply disputed, fact-based defense for dismissal. Without any grounding in the pleadings or evidence, Defendants speculate that Plaintiffs' "failure to secure its own account information" caused the security breach. Defendants offer no evidentiary support for this, resting their theory only on contract snippets regarding Pirozzi, Inc.'s obligation to safeguard its account information. All along, Defendants ignore their own obligations. These contract snippets do not remotely establish that the hack resulted from Plaintiffs' conduct, as opposed to Defendants' own failure to safeguard Plaintiffs' information and funds.

*First*, and most significantly, Section 39.6 obligates *CardConnect* to "use commercially reasonable efforts to *maintain the security of the Services and the Platform.*" Plaintiffs have more than adequately alleged that Defendants failed to use commercially reasonable efforts to maintain the security of the Services and the Platform. Indeed, as the Amended Complaint alleges that *Defendants*—not Plaintiffs'—are culpable for taking Pirozzi's funds for themselves or transferring them to an unauthorized party. (Dkt. 23, ¶¶ 15-24; 40-42). Accepting this as true at the motion to dismiss stage, the allegations in the Amended Complaint plainly state a claim for breach of the Agreement, including §39.6.

*Second*, Plaintiffs specifically allege that Defendants breached the Agreement by, among other things, "failing to properly safeguard the payments owed to Pirozzi, Inc., failing to implement security controls in accordance with commercial norms, engaging in a series of failures to return the funds owed to Pirozzi, Inc., and continuing to charge membership fees for services not rendered, thereby depriving Pirozzi, Inc. of the benefit of the bargains o the parties struck." *Id.*

at ¶ 73. Defendants' rank speculation in its motion papers that the security breach was somehow caused by Plaintiffs' own failure to "use commercially reasonable efforts to maintain the security of [Plaintiffs'] Systems" is wholly unsubstantiated—it is not established by the Complaint's allegations, let alone any evidence. Instead, it is a mere disputed, fact-based defense.

*Third,* contrary to Defendants' contention, Pirozzi, Inc. does *not* admit it failed to maintain the security of its own accounts. Rather, Pirozzi, Inc. specifically alleges that it did *not at any time* make any changes to its account information. (Dkt. 23, ¶¶ 22, 31, 40-42). Defendants insist that because Plaintiffs allege that its bank account information was changed by an unauthorized party who "would need to provide particular security information," this Court should draw inferences in favor of the Defendants' theory (*see* MTD, p. 8), namely, that Pirozzi, Inc. must have provided its security information to the third party. But Defendants completely ignore Plaintiffs allegations— which again, must be accepted as true and afforded every favorable inference—that it was Defendants' inadequate security controls that allowed the unauthorized party to hack into Defendants' systems and steal Pirozzi, Inc.'s funds. (Dkt. 23, ¶¶ 20, 72-77, 147-148).

*Fourth*, Fiserv's own SEC Form 10-K contains admissions that confirm the plausibility of Plaintiffs' allegations that Defendants failed to properly implement security controls. Indeed, Defendants admit that their own "employees" can obtain "unauthorized access and use" of "sensitive data" (e.g., the password and security questions Plaintiffs set) to steal:

> We expect that unauthorized parties will continue to attempt to gain access to our systems …. These events could create costly litigation [and] significant financial liability.… [W]e cannot be certain that the security measures and procedures we have in place to detect security incidents and protect sensitive data, including protection against unauthorized access and use by our employees, will be successful or sufficient to counter all current and emerging … risks and threats. *See* https://newsroom.fiserv.com/node/46626/html.

### i. Breach of Privacy Policies

Plaintiffs Pirozzi, Inc. and Pirozzi Enterprises also assert breach of contract claims (and plead promissory estoppel claims in the alternative) against Defendants CardConnect and Fiserv based on the breach of their respective privacy policies. (Dkt. 23, ¶¶ 79-87).

It is well settled in New York that the terms of privacy policies are enforceable. For example, in *Wallace v. Health Quest Sys.*, 2021 U.S. Dist. LEXIS 54557, *27-28 (S.D.N.Y. 2021), the Court found that plaintiffs plausibly alleged breach of implied contract based on a publicly available privacy policy on defendant's website following a data breach. Indeed, "[u]nder New York law, [a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Wallace,* 2021 U.S. Dist. LEXIS at *27, *citing Leibowitz v. Cornell Univ.,* 584 F.3d 487, 507 (2d Cir. 2009). "The existence of an implied contract will ordinarily be a question of fact, as it involves an assessment of the parties' conduct and the extent to which such conduct demonstrates a meeting of the minds." *Wallace,* 2021 U.S. Dist. LEXIS at *27.

Here, the Plaintiffs allege that CardConnect's Privacy Policy and Fiserv's Privacy Notice, which both set forth Defendants' responsibilities with respect to the security and protection of Plaintiffs' data, are valid and binding contractual obligations. (Dkt. 23, ¶¶ 80-82). Alternatively, Plaintiffs allege that these policies are enforceable under promissory estoppel because the promises contained in them were reasonably relied upon by Plaintiffs to their detriment *Id.* Section 6 of CardConnect's Privacy Policy promises that CardConnect "will take all reasonable precautions to prevent the loss, misuse or alteration of your personal information[,]" and Fiserv's Privacy Notice attests that Fiserv will install appropriate security measures to prevent against the unauthorized

alteration of customer data. Just like in *Wallace,* the terms of privacy notices posted on Defendants' website "support an inference that [Defendants] intended to be bound by its obligation to safeguard plaintiffs Private Information." *Wallace,* 2021 U.S. Dist. LEXIS at *27-28. Accordingly, Plaintiffs' claims for breach of the privacy notices should not be dismissed.

### ii. Pirozzi Enterprises

Defendants argue that Pirozzi Enterprises' claim for breach of contract (or alternatively, promissory estoppel) based on Defendants' violations of their respective privacy policies should be dismissed because Plaintiffs "fail to explain how Defendants breached the policies as it relates to Pirozzi Enterprises." *See* MTD, p. 5. However, Defendants fail to recognize that Pirozzi Enterprises was itself a customer of CardConnect / Fiserv, and entered into similar business arrangements. (Dkt. 23, ¶ 16). Accordingly, Pirozzi Enterprises, just like Pirozzi, Inc., relied upon the various promises set forth in Fiserv and CardConnect's privacy policies as it related to Defendants' security protocols. *Id.* at ¶ 82. As set forth above, Plaintiffs have sufficiently alleged that Defendants breached those privacy policies, and Pirozzi Enterprises was damaged because it was required to transfer funds to Pirozzi, Inc. so that it could pay its costs and expenses while Defendants failed and refused to remit Pirozzi, Inc.'s sales receipts. These allegations state an injury-in-fact. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) ("Satisfying the injury-in-fact requirement is a low threshold which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy"). Based on the foregoing, Pirozzi Enterprises' claims are adequately alleged.

### B. Bailment

Pirozzi has adequately pled a claim for bailment against CardConnect and Fiserv because Defendants took possession of Pirozzi's specifically identifiable funds, then gave them to an unauthorized party. (Dkt. 23, ¶¶ 88-92).

Defendants' argument that the bailment claim duplicates the contract claim ignores well-settled New York law that a "contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract." *See Sommer v. Fed. Signal Corp.,* 79 N.Y.2d 540, 551 (1992). New York appellate courts routinely allow both contract and bailment claims to proceed simultaneously. *See, e.g., Pivar v. Graduate Sch. Of Figurative Art of the N.Y. Acad. Of Art,* 290 A.D.3d 212, 212-13 (1st Dep't 2002) ("It is the element of lawful possession, however created, and duty to account for the thing as the property of another that crates the bailment, regardless of whether such possession is based on contract in the ordinary course or not.") (citation and internal quotation marks omitted).

### C. Conversion

As with the bailment claim, Defendants' misconduct is redressable as a conversion because the Amended Compliant adequately alleges that Defendants intentionally violated a non-contractual legal duty to not violate Plaintiffs' property rights by taking and disposing of Plaintiffs' assets without authority. *See Connecticut N.Y. Light. Co. v Manos Bus. Mgt. Co., Inc.,* 171 A.D.3d 698, 699 (2d Dep't 2019) ("While a cause of action alleging conversion cannot be predicated upon a mere breach of contract, the contracting party may also be held liable in tort where the conduct which constitutes a breach of contract also constitutes a breach of a duty distinct from, or independent of, the breach of contract"); *see also sources cited Point I(B), supra.*

The facts in *Connecticut N.Y. Light* are remarkably similar to those here. In *Connecticut N.Y. Light,* the plaintiff sought damages for breach of contract and conversion, alleging that it hired the defendant as its employee payroll services provider. Instead of remitting all the sums defendant collected from the plaintiff to the government, the defendants misappropriated some of those funds. *Connecticut N.Y. Light,* 171 A.D.3d at 699. The defendants moved for summary judgment dismissing the conversion claim as duplicative of the contract claim. *Id.* The Appellate Division upheld the trial court's denial of summary judgment on the basis that the depositing of plaintiff's funds created a bailment, which created a legal duty of care by defendant—independent of its contractual obligations to the plaintiff. *Id.* at 700. The court thus allowed a conversion claim to proceed.

Just like the plaintiff in *Connecticut N.Y. Light,* Plaintiffs here sufficiently allege a claim for conversion separate and apart from Defendants' duties under the Agreement. Specifically, Plaintiffs allege that a bailment relationship existed between Pirozzi, Inc. and Defendants by virtue of Defendants taking custody of Pirozzi, Inc.'s funds, making promises separate and independent from the Agreement to return those funds, and then intentionally failing to do so. *See Connecticut N.Y. Light*, 171 A.d.3d at 700. (Dkt. 23, ¶ 107). Accordingly, Plaintiffs state a claim for conversion.

**D. Fraud / fraud in the inducement**

Fraud requires: (1) a material false representation; (2) made with an intent to defraud the plaintiff; (3) the plaintiff's reasonable reliance on the false representation; and (4) damages. *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006).

Here, the Amended Complaint alleges with specificity the Plaintiff's fraud claim: that Defendants purposely misled Plaintiffs in a myriad of ways, including making material false representations concerning: (1) Defendants' security controls, which Plaintiffs specifically allege

were made with an intent to induce Pirozzi, Inc. to enter into the Agreement; and (2) Defendants' intent to return Pirozzi, Inc.'s funds following the security breach, which was designed to maintain Pirozzi, Inc. and Pirozzi Enterprises as customers so that Defendants could continue to charge membership fees. (Dkt. 23, ¶¶ 93-102).

Contrary to Defendants' arguments, Plaintiffs' fraud claims are not duplicative of the breach of contract claim because when a defendant misrepresents a present fact or an intent to perform a contract in order to mislead a party, the plaintiff can sustain a claim separate and apart from the contract. *Rudman v. Cowles Comm'ns, Inc.,* 30 N.Y.2d 1, 9 (1972) ("There is no doubt that a misrepresented intention to perform a contract may constitute actionable fraud."); *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119 (1969) (allowing a fraud claim to proceeding along with a contract claim where seller misrepresented present condition of property, even though those facts were warranted in contract). To be clear, a claim for fraud can be based on a breach of contractual warranties even in the face of a breach of contract claim. *Wyle Inc. v. ITT Corp.,* 130 A.D.3d 438, 440 (1st Dep't 2015).

As set forth above, Plaintiffs have sufficiently pled fraudulent inducement because Defendants falsely represented that they would safely and securely maintain the credit card sale technology used by Pirozzi (Dkt. 23, ¶ 16) and misrepresented the sufficiency of Defendants' security controls, including that any transfer of fund for Pirozzi, Inc. would be made only to an account number provided by Pirozzi, Inc. (*Id.* at ¶ 20). Plaintiffs pled with particularity that Defendants made these representations with knowledge of their falsity, with the intention to induce Pirozzi, Inc. into entering into the Agreement, that Pirozzi, Inc. actually relied on these representations when it entered into the Agreement, and that Plaintiffs suffered damages as a result. (*Id.* at ¶¶ 93-102).

Moreover, Plaintiffs have sufficiently stated a claim for fraud based on Defendants' actions following the security breach, namely, that specifically named Fiserv and CardConnect representatives including Delva, Heather, Bonnie Clark and Mr. Bellet, repeatedly represented to Plaintiffs as early as August 2021, that the missing funds would be returned in full, when in reality they had no intention to honor these promises. (Dkt. 23, ¶¶ 24-35; 37). Instead, Defendants engaged in a series of lies to cover up that Defendants had transferred funds belonging to Pirozzi, Inc. to unauthorized accounts. Plaintiffs further allege that Defendants' conduct was designed to string Plaintiffs along with false promises that the funds would be returned in order to maintain Pirozzi, Inc. as a customer and continue to collect fees, and lull Plaintiffs into not taking other protective measures to seek recovery of the funds. (*Id.* at ¶ 100).

Defendants seemingly ignore these allegations altogether, arguing that Plaintiffs fail to plead fraud because Defendants' stated reasons why the funds were not transferred were "not contradictory." *See* MTD, p. 11. A consistent fraud is a fraud nonetheless. It is not a basis to elide Plaintiffs' well-pleaded allegations of fraud.

### E. Breach of fiduciary duty

Defendants seek dismissal of Plaintiffs' breach of fiduciary duty claims based, again, on the same defective duplicity arguments, as well as failure to state a claim.

*First*, for the reasons set forth above, the fiduciary-breach claim is not duplicative of the contract claim because it seeks redress for the independent, enhanced legal duties arising from a fiduciary relationship. *See* Points IIB, IIC and IID, *supra; see also Sommer v. Fed. Signal Corp.,* 79 N.Y.2d at 551.

*Second*, Plaintiffs' fiduciary-duty claim is adequately alleged. While nobody denies that fiduciary duties do not inhere to most contract relationships, the Court of Appeals has held that

"[t]he existence of such a special relationship may give rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Kimmell v. Schaefer,* 89 N.Y.2d 257, 264 (1996). "[O]nce the nature of [that] duty has been determined as a matter of law, whether a particular defendant owes a duty to particular plaintiff is a question of fact." *See Id.*

Plaintiffs have sufficiently pleaded a special relationship between the parties such that the breach of fiduciary claim should not be dismissed. Specifically, Plaintiffs allege that Pirozzi, Inc. "trusted and had confidence in Defendants to properly administer and process its credit receipts and to perform their duties required in the Agreement and Terms and Conditions that went beyond an ordinary business relationship. Defendants were the sole exclusive vendor responsible for handling all of Pirozzi, Inc.'s credit card processing and Pirozzi, Inc. entrusted its confidential bank account information to Defendants." (Dkt. 23, ¶ 111). Here, Plaintiffs have sufficiently alleged that Defendants—the sole exclusive vendor responsible for safeguarding all of Pirozzi, Inc.'s credit card sales—owed a special duty to Plaintiffs to protect and safeguard its bank account and other confidential information and funds separate from the Agreement. Accordingly, Plaintiffs' sixth claim for breach of fiduciary duty should not be dismissed.

### F. Indemnification

Defendants argue that Plaintiffs' claim for indemnification should be dismissed because (1) the provision does not apply to intra-party claims; and (2) the Agreement limits CardConnect's obligation to indemnify Pirozzi, Inc. to situations of "gross negligence or willful misconduct." *See* MTD, p. 12. First, Defendants reliance on *Hooper Associates, Ltd. v. AGS Computers, Inc*., 74 N.Y.2d 487 (1989) is misplaced, as that case involved a very different set of facts and different contractual language. Notably, the court in *Hooper* pointed to other provisions in the contract which "unmistakably relate to third-party claims." *Hooper,* 74 N.Y.2d at 492. Unlike the defendant

in *Hooper,* the Defendants here do not identify any similar provisions in the Merchant Processing Agreement that would allow this Court to determine, as a matter of law and before any discovery has taken place, that the indemnification provision only applies to intra-party claims. Second, the Amended Complaint does not allege a pure intra-party claim, inasmuch as Defendants' plausibly allege that Defendants allowed some unknown, third party fraudster to actually steal Pirozzi, Inc.'s funds.

Third, Defendants argument that the indemnification claim is barred by Section 33.2 of the Agreement which purportedly limits CardConnect's obligation to indemnify Pirozzi, Inc. to situations of "gross negligence or willful misconduct" also fails. Plaintiffs have sufficiently pleaded intentional misconduct and gross negligence, which is recognized when defendants have caused other fraud losses based on their failure to implement reasonable security controls. *See Bessemer Sys. FCU v. Fiserv Sols.*, *LLC*, 472 F. Supp. 3d 142 (W.D. Pa. 2020); *Copper Basin FCU v. Fiserv Sols., Inc.*, 2013 WL 3421916, at *4-5 (Tenn. Ct. App. July 3, 2013) (unpublished); *Tillage Commodities Fund, L.P. v. SS&C Techs., Inc.*, 58 N.Y.S.3d 28, 30 (1st Dep't. 2017); *infra*, Point II(L).

### G. Negligence

Defendants argue that Plaintiffs' claim for negligence should be dismissed because the Amended Complaint does not allege a non-contractual duty owed by Defendants to Plaintiffs. This argument is wholly without merit.

"Data breach jurisprudence has developed significantly in the last twelve years. Numerous courts applying New York law have denied motions to dismiss negligence claims in data breach cases." *Toretto v. Donnelley Fin. Sols., Inc.*, 2022 U.S. Dist. LEXIS 20558, at *12 (S.D.N.Y. Feb. 4, 2022). Indeed, this Court has repeatedly held that New York law imposes a common law duty

upon a contracting party to reasonably protect sensitive information. *See Hoffmann v. Major Model Mgmt.*, 2022 U.S. Dist. LEXIS 60752, *10-11 (S.D.N.Y. 2022) (finding a common law duty upon a contracting party to reasonably protect confidential personal information and denying motion to dismiss negligence claim); *Jones v. Com. Bancorp, Inc*., 2006 U.S. Dist. LEXIS 32067, at *2 (S.D.N.Y. May 23, 2006) (denying motion to dismiss negligence claim where plaintiff established she provided sensitive information to bank).

In this case, the Amended Complaint sets forth that Defendants collected, stored, and processed Plaintiffs' credit card receipts and account data on internet-accessible computer systems. In doing so, Defendants owed a duty to Plaintiffs to exercise reasonable care under the circumstances, which includes using reasonable measures to protect against foreseeable hacking risks. *See Daly v. Metro. Life Ins. Co*., 4 Misc. 3d 887, 893 (Sup. Ct. N.Y. Cty. 2004) (holding that defendant had a duty to protect the confidential personal information provided by the plaintiffs and denying motion for summary judgment on plaintiffs' negligence claim). Defendants were the only parties that realistically could ensure that its own systems could sufficiently serve and protect Plaintiffs' information and assets. Thus, Defendants owed a duty to properly safeguard Plaintiffs' account data and credit card funds. Defendants breached that duty by failing to institute appropriate protective measures to maintain the safety and security of Plaintiffs credit card proceeds and bank account information. Accordingly, Plaintiffs state a claim for negligence.

Plaintiffs also establish a claim for gross negligence based upon the allegations that Defendants' conduct smacks of intentional misconduct by failing to return the monies bailed. *See Tillage Commodities Fund, L.P. v. SS&C Techs., Inc.,* 58 N.Y.S.3d 28, 30 (1st Dep't 2017) (gross negligence claim stated based upon defendant processing fraudulent requests to transfer plaintiff's funds); *Roth v. Black Star Publ'g Co.*, 658 N.Y.S.2d 59, 61 (2d Dep't 1997) ("in the case of a

bailment, the failure to return the object bailed is prima facie evidence of gross negligence"). Thus, Plaintiffs have sufficiently pleaded gross negligence.

Defendants also halfheartedly argue that the economic loss doctrine bars recovery on a negligence cause of action. This argument is similarly unavailing. The economic loss rule "denies the purchaser of a defective product a tort action against sellers, manufacturers, installers and servicers for purely economic losses sustained as a result of the defective product." *Assured Guar. (UK) LTD. v. J.P. Morgan Inv. Mgmt. Inc.*, 80 A.D.3d 293, 306 (1st Dep't 2010), aff'd, 18 N.Y.3d 341 (2011). This case does not fit that pattern. Plaintiffs did not purchase a defective product from Defendants. Rather, the harm here was caused by Defendants' misconduct after being given access to Pirozzi, Inc.'s credit card proceeds and bank account information. Defendants collected those credit card receipts, did not adequately protect the funds, promised to return the funds, and then failed to do so. Plaintiffs' claim for negligence seeks redress for violation of the duty to protect its sensitive information, and therefore, the economic loss doctrine does not apply. Indeed, courts have routinely denied motions to dismiss complaints that contain both tort and contract claims because the economic loss doctrine did not bar the tort claims. *See, e.g., Toretto v. Donnelley Fin. Sols., Inc.*, 2022 U.S. Dist. LEXIS 20558, *27-28 (S.D.N.Y. 2022) (noting that "the applicability of the economic loss rule outside the product-liability context from which it originated is doubtful"); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017) (concluding that the economic loss doctrine was "inapplicable" to claims in a data breach case "because the Complaint does not allege a products liability claim").

## H. Promissory Estoppel

Defendants argue that the promissory estoppel claim is duplicative of the breach of contract claim and that the Amended Complaint does not establish reliance on Defendants' statements. *See*

MTD, p. 8-9. On the contrary, the allegations in support of the promissory estoppel claim are based on conduct that is separate and apart from any contractual obligation. (Dkt. 23, ¶¶ 133-136). Specifically, the Amended Complaint states that after alerting Defendants that Pirozzi, Inc.'s credit card receipts were no longer being properly transferred to Pirozzi, Inc.'s bank accounts, both CardConnect and Fiserv representatives made a series of separate and independent promises that the missing funds would be returned to Pirozzi, Inc. in full. (Dkt. 23, ¶ 133). The Amended Complaint alleges that that Pirozzi relied on these promises to its detriment by remaining a customer and allowing Defendants to continue to collect credit card and to forego other measures to recover the missing funds. (*Id.* at ¶ 134).

*First,* as stated above, Defendants failed to deliver on this promise. (*Id.* at ¶ 135). Thus, the allegations in support of the promissory estoppel claim are not duplicative of its breach of contract claim and Defendants' motion to dismiss wholly fails to address these allegations. *See Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 115 (E.D.N.Y. 2009) (denying motion to dismiss promissory estoppel claim despite existence of contract where plaintiff alleged that defendants made post-execution assurances that were not part of the contract, which were relied on to plaintiff's detriment).

*Second*, because Defendants argue that Fiserv is not a party to any Agreement (MTD, p. 5-6), Pirozzi, Inc. is clearly entitled to pursue a quasi-contract claim against Fiserv. And Pirozzi, Inc. may state a quasi-contract claim against CardConnect given Plaintiffs seek rescission of the Agreement. *See Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 199 (S.D.N.Y. 2021) (where defendant does not concede the existence of a valid contract plaintiffs are permitted to plead an alternative theory of promissory estoppel). Further, Rule 8(d)(2) allows claims to be stated in the alternative, Plaintiffs have done here.

**Third,** despite Defendants' erroneous contentions, Pirozzi, Inc., expressly alleged that it relied upon the representations in Defendants' privacy policies to maintain the safety and security of Pirozzi, Inc.'s account data and access. (Dkt. 23, ¶¶ 80-86). As set forth in Point I(B) *supra*, the representations made in the privacy policy are akin to a clear unambiguous promise made by Defendants. Pirozzi, Inc.'s reliance upon those representations was reasonable and certainly foreseeable by Defendants, and Plaintiffs have suffered damages as a result of Defendants failure to fulfill those promises.

### I. Money had and Received

"A cause of action for money had and received is one of quasi-contract or of contract implied-in-law." *Goel v. Ramachandran*, 111 A.D.3d 783, 789-790 (3d Dep't. 2012). The essential elements of a cause of action for money had and received are: (1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money. *Id*. at 790.

**First,** Pirozzi, Inc. specifically alleged that Defendants received and benefitted from credit card funds that rightfully belonged to Pirozzi, Inc., and that Defendants should not, in good conscious, be entitled to retain any funds belonging to Pirozzi, Inc. *See* Compl., Dkt. 23, ¶¶ 138-140.

**Second,** the question of whether Defendants were aware that Pirozzi, Inc.'s money was improperly transferred to an unknown bank account is an issue of fact that requires discovery. *See Salisbury v. Salisbury*, 175 A.D.2d 462, 463 (3d Dep't 1991) (finding error of dismissal of money had and received claim were issues of fact existed concerning whether defendant knew that the moneys transferred to her belonged to plaintiff).

**Third,** Pirozzi, Inc.'s money had and received claim is pled in the alternative of the other quasi-contractual claims as it relates to CardConnect. *See Sabre Intl. Sec., Ltd. v. Vulcan Capital Mgt., Inc., 95 A.D.3d 434, 439* (2d Dep't. 2012) (bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue permits plaintiff to proceed upon a theory of quasi-contract). Here, Pirozzi, Inc. alleges that the Agreement should be rescinded due to fraud, and is therefore entitled to pursue its quasi-contract claim for money had and received. *See Goldman v. Simon Property Group, Inc.*, 58 AD3d 208 (2d Dep't 2008).

**Fourth**, the Agreement has no impact on Pirozzi, Inc.'s claim against Fiserv, which is not a signatory to the Agreement. Pirozzi, Inc. alleges Fiserv's agents played a role in the receipt of its funds and that Fiserv, as the third party, benefitted from the receipt of those funds. Thus, there is no basis to dismiss the money had and received claim against Fiserv.

### J. Rescission

Rescission may be plead by alleging "failure of consideration, fraud in making the contract, inability to perform it after the contract is made, repudiation of the contract or for a breach that substantially defeats the purpose of the contract." *Dong Wook Park v. Michael Parke Dori Grp., Inc.,* 12 Misc.3d 1182(A) (Sup. Ct. Nassau Cnty. 2006) (citing *Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.,* 199 N.Y. 268, 286 (1910). The Court of Appeals has stated that a claim for rescission "must stand if based on but one adequate ground." *Callanan*, 199 N.Y. at 286.

Here, Pirozzi, Inc. states a claim for rescission based upon Defendants' fraudulent inducement of the Agreement and because CardConnect substantially breached the Agreement thereby defeating the purpose of the contract. As set forth in Point IC, *supra*, CardConnect fraudulently induced Pirozzi, Inc. to enter into the Agreement by misrepresenting to Pirozzi, Inc.

its capabilities and intentions to perform in accordance with the Agreement, when in fact CardConnect lacked such capabilities and intentions. In reality, CardConnect took no steps to maintain Pirozzi, Inc.'s account security and Defendants' SEC filing confirms that they were aware that their employees could steal customer data. CardConnect's representations were material to Pirozzi, Inc.; Pirozzi, Inc. reasonably relied on them in deciding whether to enter into the Agreement, which did not disclaim reliance on these types of specific representations; and the falsity of CardConnect's representations was within CardConnect's peculiar knowledge and could not have been reasonably discovered by Pirozzi, Inc. Accordingly, Pirozzi, Inc. pleaded a claim for rescission based on fraud. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC,* 19 A.D.3d 273, 275 (1st Dep't 2005) ("A contract induced by fraud…is subject to rescission, rendering it unenforceable by the culpable party."); *Sabby Healthcare Master Fund Ltd. v Microbot Med. Inc.*, 180 A.D.3d 529, 531 (1st Dep't 2020) (affirming trial court decision granting the right to rescission of the parties' contract based on fraudulent inducement).

Pirozzi, Inc. is also entitled to rescission of the Agreement based upon CardConnect's breach of the Agreement. Pirozzi, Inc. contracted with CardConnect to provide credit card processing services, maintain the security of Pirozzi's credit card proceeds and bank account information, and properly transfer Pirozzi, Inc.'s credit card proceeds to Pirozzi, Inc.'s designated bank account. Instead, CardConnect failed to safeguard the payments owed to Pirozzi, Inc., failed to implement security controls, and failed to deliver or return funds to Pirozzi, Inc. CardConnect's conduct is undoubtedly different from what was contracted for and central to what was bargained for in the Agreement—there is nothing more fundamental to the Agreement that Defendants' obligations to protect the security of Pirozzi, Inc.'s hard-earned credit card proceeds and Pirozzi, Inc. would not have otherwise entered into the Agreement. *See Helprin v. Harcourt, Inc.*, 277 F.

Supp. 2d 327, 339 (S.D.N.Y. 2003) (noting that test for determining the materiality of a breach for purposes of rescission is whether the alleged breach is of such nature and such importance that the contract would not have been made without it); *see also GM Corp. v. Villa Marin Chevrolet*, 2000 U.S. Dist. LEXIS 2772, *1 (E.D.N.Y. 2000) (plaintiff need not establish that the defendant failed to perform in every respect, but must demonstrate a failure which leaves the subject of the contract substantially different from what was contracted for).  Thus, Pirozzi, Inc. has stated a claim for rescission based on CardConnect's material breach.

Lastly, Defendants' argument regarding the fact that Pirozzi, Inc. asserts claims for breach of contract and rescission (MTD, p. 14) is meritless.  Rule 8(d)(2) allow claims to be stated in the alternative, and courts allow rescission and contract-breach claims to  proceed concurrently at the pleading stage. *Rekor Sys. v. Loughlin*, 2020 U.S. Dist. LEXIS 219768, *15 (S.D.N.Y. 2020).

### K.  Aiding and Abetting the Commission of a Tort

In order to state a claim for aiding and abetting the commission of a tort, plaintiff must allege: (1) the existence of a fraud; (2) defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the tort's commission.  *Steed Fin. LDC v. LASER Advisers, Inc.*, 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003).   The Amended Complaint alleges that to the extent that Defendants establish that a third-party fraudster was responsible for stealing Pirozzi, Inc.'s credit card proceeds (which is precisely what Defendants argue throughout their motion to dismiss), Defendants substantially assisted said fraudster in the commission of this fraud and conversion of Plaintiffs' assets by wrongfully transferring Pirozzi, Inc.'s credit card receipts. Defendants claim that Plaintiffs' claim fails because Defendants did not have knowledge of a fraud. *See* MTD, p. 14.   However, Defendants knew that their systems could be hacked by rogue employees and third-party hackers, yet failed to secure against these risks.  Specifically,

Fiserv's SEC filing confirms that Defendants foresaw their weak security would lead to "significant financial liability" because their own employees can misuse "sensitive data" (e.g., Plaintiffs' password) to steal client funds and data. Thus, Defendants' failure to provide adequate security controls enabled a third-party fraudster to gain access to Pirozzi, Inc.'s credit card receipts and execute the scheme to steal from Pirozzi, Inc.

### L. Pirozzi, Inc. sufficiently pleaded a claim for a declaratory judgment regarding the exculpatory clause

Defendants attempt to shield themselves from liability on Plaintiffs' claims based upon the limitation of liability clause in the Agreement. Specifically, Defendants argue that Section 27.3 of the Agreement bars Plaintiffs from recovering damages under any tort theory and that Section 27.4 of the Agreement limits Plaintiffs' claims for any damages beyond $50,000. MTD, pp. 14-15. This argument fails for multiple reasons.

### i. The limitation of liability provision does not apply to Plaintiffs' claims against Defendants for breach of the privacy policies.

As detailed above, Plaintiffs set forth a claim for breach of the CardConnect's Privacy Policy and Fiserv's Privacy Notice, supra, Point II (A). There is no limitation of liability provision contained in the privacy policies, and as a result, there is no basis to limit Plaintiffs' potential damages award stemming from any breach of the privacy policies. *See Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) ("courts should be reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include") (citations omitted).

### ii. Defendants' representatives waived the limitation of liability provision.

Defendants' conduct waived the Agreement's limitation liability provision. As set forth in the Amended Complaint, CardConnect and Fiserv representatives made a series of promises that

the missing funds would be returned to Pirozzi, Inc., in full, without regard to the amount specified in the limitation-of-liability provision. (Dkt. 23, ¶¶ 133; 153). Section 45.6 of the Terms and Conditions, which governs waiver, is devoid of any language requiring that a waiver of any provision be in writing. By expressly and unambiguously promising that the funds at issue would be returned, Defendants waived those provisions. *See Condor Funding, LLC v. 176 Broadway Owners Corp.*, 147 A.D.3d 409, 411 (1st Dep't 2017) ("[A] contracting party may orally waive enforcement of a contract term notwithstanding a provision to the contrary in the agreement. Such waiver may be evinced by words or conduct, including partial performance.").

Defendants' motion to dismiss disingenuously relies on Section 45.7 of the Agreement, which governs *amendment*, rather than waiver. Nowhere in the Section 45.6 of the Agreement entitled "Waiver" does the Agreement state that a *waiver* must be in writing, reflecting CardConnect's acceptance of waivers created by its agents' statements and conduct. (Dkt. 23-1, p. 42). Further, the Agreement does not contain a prohibition against oral modification. (Id.). Even so, the existence of a non-waiver clause does not in itself preclude waiver of a contract clause. *See Dice v. Inwood Hills Condo.*, 237 A.D.2d 403, 404 (1st Dep't 1997). Thus, Pirozzi, Inc. sufficiently pled a claim for wavier of the limitation of liability clause.

Moreover, whether Defendants waived the agreement is an issue of fact requiring discovery and should not be decided at the motion to dismiss phase. *See Condor Funding, LLC*, 147 A.D.3d at 411 (holding that question of whether plaintiff intended to waive lease provision was a question of fact requiring resolution at trial); *Dice*, 237 A.D.2d at 404 (noting that waiver is usually an issue of fact).

The limitation of liability provision is also not enforceable here to limit damages to $50,000 for the following additional reasons:

- **The limitation of liability clause does not bar Plaintiffs' claims that are based on intentional misconduct and gross negligence.** It is well-settled that a contracting party cannot insulate itself from its willful misconduct or grossly negligent acts. *See Kalisch-Jarcho v. City of NY*, 58 N.Y.2d 377, 386-386 (1983) ("[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances and will not apply to exemption of willful or grossly negligent acts."); *Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312, 317 (S.D.N.Y. 2010) ("New York courts will decline to enforce a contractual limitation or waiver of liability clause when there is willful or grossly negligent or recklessly indifferent conduct."); *Kalinkina v. Martino Cartier Enters., LLC*, 2017 U.S. Dist. LEXIS 95670, *10-11 (S.D.N.Y. 2017) (denying motion to dismiss gross negligence cause of action based upon allegations of intentional wrongdoing and gross misconduct); *Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, 2003 U.S. Dist. LEXIS 5182 *9 (S.D.N.Y. Apr. 1, 2003) (holding that "an exculpatory clause, no matter how expansive its terms, cannot insulate a contracting party from its own fraud"); *Bessemer Sys. FCU v. Fiserv Sols.*, LLC, 472 F. Supp. 3d 142 (W.D. Pa. 2020) (holding that another Fiserv customer adequately alleged defendants' limitation of liability provision inapplicable to intentional torts (applying NY law)). As a consequence, the limitation of liability provision does not apply to the allegations that Defendants acted intentionally and with gross negligence with respect to their bailment, conversion, fraud, breach of fiduciary duty, and negligence claims. (*E.g.*, Dkt. 23, ¶¶ 121-131).

- **The limitation of liability provision does not bar Plaintiffs' claims for punitive damages.** Under New York law, punitive damages can be recovered for "an intentional tort," or when a defendant acts with "actual malice or ill will" or "willfully, wantonly, or maliciously." *See Italian & French Wine Co. v. Negociants U.S.A.*, 842 F. Supp. 693, 702 (W.D.N.Y. 1993) (denying motion to strike punitive damages allegations in business dispute arising from a commercial contract). In addition to punitive damages for tort claims, New York law recognizes "the possibility of punitive damages on a contract claim"—a possibility present here given the sufficiently serious allegations of harm. (Dkt. 23, ¶¶ 64-66); *Koch v. Greenberg*, 626 F. App'x 335, 338, 340 (2d Cir. 2015) (affirming award of punitive damages for misrepresentations concerning the authenticity of wine, despite sales contract stating that the wine was sold "AS IS without any representations"). Accordingly, the alleged limitation on punitive damages in the Agreement is unenforceable, and "the determination of whether to award punitive damages should be reserved for the fact trier." *Allied Ir. Banks, P.L.C. v. Bank of Am., N.A.*, 2006 U.S. Dist. LEXIS 4270, at *43 (S.D.N.Y. Jan. 31, 2006) (denying motion to strike); *see also Bessemer Sys. FCU*, 472 F. Supp. 3d 142 (rejecting similar Fiserv argument to have limitation of liability provision bar punitive damages under NY law).

- **The limitation of liability provision set forth in the Agreement with CardConnect does not apply to Fiserv's conduct.** Because Fiserv is not a signatory to the Agreement with a liability cap, Pirozzi, Inc.'s claims may proceed uncapped against Fiserv.

- **Pirozzi, Inc.'s claim for rescission would render the limitation of liability provision void.** The effect of rescission "is to declare the contract void from its inception and to put or restore the parties to status quo" *County of Orange v. Grier*, 30 A.D.3d 556, 557 (2d Dep't 2006). If Pirozzi, Inc. is successful on its claim for rescission, the limitation of liability provision would no longer remain in effect. For this reason, the Court should not dismiss Plaintiffs' declaratory judgment claim prior to the resolution of the rescission claim.

In sum, the Court should not award what amounts to declaratory relief in favor of Defendants regarding the limitation of liability without permitting discovery. At this early stage in litigation, there are several issues of fact with respect to applicability and enforceability of the limitation of liability provision. Rule 12(b)(6) is not the proper vehicle for awarding Defendants' requested relief. As a result, a ruling that denies Plaintiffs the opportunity to recover the full extent of their damages without discovery would be premature.

### M. Unjust Enrichment

Pirozzi, Inc. has stated a cause of action for unjust enrichment because the Amended Complaint indisputably alleges that Pirozzi, Inc. conferred benefits on Defendants, Defendants appreciated those benefits and that the enrichment was unjust. (Dkt. 23, ¶¶ 159-161); *Korff v. Corbett*, 18 A.D.3d 248, 251 (1st Dep't 2005) ("plaintiffs have properly asserted that a benefit was bestowed…by plaintiffs and that defendant will obtain such benefit without adequately compensating plaintiffs." (citation omitted). The benefits sought to be recovered include overpayments made to Defendants for credit card processing services deficiently performed under a contract that Defendants procured by fraud and when Defendants had no capability of properly protecting Pirozzi, Inc.'s data. Pirozzi, Inc. also seeks to recover the membership fees paid to Defendants after Defendants services ceased. Further, Pirozzi, Inc. is not required to show that Defendants committed a wrongful act to find them liable on an unjust enrichment claim. *Marini v. Adamo*, 995 F. Supp. 2d 155, 204 (E.D.N.Y. 2014).

In asserting that the unjust enrichment cause of action is duplicative of Pirozzi, Inc.'s breach of contract cause of action, Defendants ignore established case law holding that a party can validly plead both breach of contract and unjust enrichment claims where a contract's existence is in dispute. *See Korff*, 18 A.D.3d at 250-52 (allowing both breach of contract and unjust enrichment claims); *Basu v. Alphabet Mgt. LLC*, 127 A.D.3d 450 (1st Dep't 2015) (same); CPLR 3014 ("Causes of action…may be stated alternatively or hypothetically."). Pirozzi, Inc. disputes the enforceability of the Agreement (Dkt. 23, ¶¶ 142-145) and thus states a claim for unjust enrichment.

## CONCLUSION

For all the reasons set forth herein, it is respectfully submitted that the Court should deny Defendants' CardConnect LLC and Fiserv, Inc.'s motion to dismiss the Amended Complaint in its entirety.

Dated: September 9, 2022

                                             BARCLAY DAMON LLP

                                             By: */s/ Charles J. Nerko*
                                                 Charles J. Nerko
                                                 Benjamin Wilkinson
                                                 Sarah A. O'Brien
                                             1270 Avenue of the Americas, Suite 501
                                             New York, NY 10020
                                             212.784.5800
                                             cnerko@barclaydamon.com
                                             bwilkinson@barclaydamon.com
                                             sobrien@barclaydamon.com

                                             Of Counsel:

                                             Majid Foroozandeh (*pro hac vice* to be filed)
                                             LAW OFFICES OF FOROOZANDEH, APC
                                             23461 South Pointe Drive, Suite 385
                                             Laguna Hills, CA 92653
                                             949.336.8505
                                             majidf@foroozandeh-law.com

*Attorneys for Plaintiffs*
*Chef Alessandro Pirozzi, Inc. and*
*Pirozzi Enterprises, LLC*