UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CHEF ALESSANDRO PIROZZI, INC. and
PIROZZI ENTERPRISES, LLC,

                Plaintiffs,

    -against-

CARDCONNECT, LLC and FISERV, INC.,

                Defendants.
-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
22-cv-0902 (DG)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this diversity jurisdiction commercial litigation, on referral from the Honorable Diane Gujarati for Report and Recommendation is Defendants' CardConnect, LLC ("CardConnect") and Fiserv, Inc. ("Fiserv," collectively, "Defendants") motion to dismiss Plaintiffs' Chef Alessandro Pirozzi, Inc.'s ("Pirozzi") and Pirozzi Enterprises, LLC's ("Pirozzi Enterprises," collectively "Plaintiffs") Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Defendants' Motion to Dismiss ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [35].

By way of Complaint dated November 22, 2021, later modified by an Amended Complaint dated April 1, 2022, Plaintiffs commenced this action asserting causes of action for: (i) breach of contract; (ii) breach of contract, or in the alternative, promissory estoppel; (iii) bailment; (iv) fraud; (v) conversion; (vi) breach of fiduciary duty; (vii) indemnification; (viii) negligence; (ix) promissory estoppel; (x) money had and received; (xi) recission; (xii) aiding and abetting the commission of a tort; (xiii)

declaratory relief; and (xiv) unjust enrichment. *See* Amended Complaint ("Am. Compl."), DE [23]. For the reasons set forth herein, the Court respectfully recommends that Defendants' Motion be granted in part and denied in part, that Pirozzi Enterprises be dismissed as Plaintiff in this action, that Pirozzi's second, third, fifth, sixth, eighth, twelfth, and thirteenth causes of action be dismissed in their entirety, and that Pirozzi's tenth cause of action be dismissed as to Fiserv, with prejudice and without leave to amend.

## I.      BACKGROUND

### A. <u>Factual Background</u>

Unless otherwise indicated, the facts set forth herein are taken from the Amended Complaint, as well as documents attached as exhibits, and are accepted as true for purposes of the instant motion. Plaintiff Pirozzi is a California corporation that operates a restaurant, Alessa by Chef Pirozzi ("Alessa"), in Laguna Beach, California. Am. Compl. ¶ 3. Plaintiff Pirozzi Enterprises is a California limited liability company that operates Salerno's Ristorante ("Salerno"), which is also located in Laguna Beach, California. *Id.* at ¶ 4. Both enterprises are owned and operated by Chef Alessandro Pirozzi ("Chef Pirozzi"). *Id.* at ¶¶ 3-4. Defendant CardConnect is a limited liability company headquartered in Pennsylvania and a wholly owned subsidiary of Defendant Fiserv, a Wisconsin corporation. *Id.* at ¶ 5-6. CardConnect provides electronic credit card point of sale infrastructure to its customers via its platform, CardPointe. *Id.* at ¶ 5.

1. <u>The Parties' Agreement</u>

In November 2020, Pirozzi entered into a Merchant Processing Application and Agreement (the "Agreement") with CardConnect pursuant to which CardConnect agreed to provide credit card payment processing technology services for transactions at Alessa. *Id.* at ¶¶ 14-15. The parties further incorporated the Merchant Services Program Terms and Conditions ("Terms and Conditions"), provided by CardConnect, into the Agreement. *See id.* at ¶ 14. Pirozzi Enterprises entered into a similar agreement with CardConnect with respect to Salerno. *Id.* at ¶ 15.

Under Section 23.6 of the Agreement, transfers of funds from CardConnect to Pirozzi were to be "based on the account number and routing number supplied by [Pirozzi, Inc.]." *Id.* at ¶ 16 (quoting Ex. A to Am. Compl.). Pirozzi identified a Bank of America bank account to CardConnect in order to receive transfers of funds. Am. Compl. ¶ 17. To modify the bank account information, an authorized representative of Pirozzi was required to provide "particular security information in accordance with security procedures established and controlled by Defendants." *Id.* From November 2020 to August 2021, CardConnect regularly transferred funds to Pirozzi's designated Bank of America account. *Id.* at ¶ 21. Plaintiffs allege that at no time prior to August 2021 did any authorized representative of Pirozzi request that CardConnect change the designated bank account. *Id.* at ¶ 22.

With respect to damages, Section 27.3 of the Agreement states:

> In no event shall [CardConnect] or our affiliates or any of our or their respective directors, officers, employees, agents or subcontractors, be liable under any theory of tort, contract, strict liability or other legal theory for lost profits, lost revenues, lost business opportunities,

exemplary, punitive, special, incidental, indirect or consequential damages, each of which is hereby excluded by agreement of the parties, regardless of whether such damages were foreseeable or whether any party or any entity has been advised of the possibility of such damages. [Pirozzi] acknowledges and agrees that payment of any early termination fee or liquidated damages as provided elsewhere in this agreement shall not be prohibited by this paragraph.

Ex. A to Am. Compl. at 22. Section 27.4 provides:

Notwithstanding anything in this agreement to the contrary (including but not limited to Sections 33 or 28.5), [CardConnect's] cumulative liability for all losses, claims, suits, controversies, breaches or damages for any cause whatsoever (including, but not limited to, those arising out of or related to this agreement), regardless of the form of action or legal theory, shall not exceed, (i) $50,000; or (ii) the amount of fees received by us pursuant to this agreement for services performed in the immediately preceding 12 months, whichever is less.

*Id.* The Terms and Conditions also include an indemnification provision, – Section

33.2 – which states:

Subject to the limitations set forth in Section 27.4, [CardConnect] agree[s] to indemnify and hold [Pirozzi] harmless from and against all losses, liabilities, damages and expenses resulting from any breach of any warranty, covenant or agreement or any misrepresentation by us under this Agreement or arising out of our or our employees' gross negligence or willful misconduct in connection with this Agreement.

*Id.* at 25. Pursuant to Section 44.1, New York law governs the Agreement. *Id.* at 38.

Further, Section 44.2 designates state or federal courts located in Suffolk County,

New York as the exclusive venue for any actions or claims arising under the

Agreement. *Id.*

Plaintiffs further allege that both CardConnect and Fiserv utilize publicly

available privacy policies, which set forth Defendants' responsibilities with respect to

the security and protection of their customer data, and function as binding

contractual obligations. *See* Am. Compl. ¶¶ 80-82. Specifically, Section 6 of CardConnect's privacy policy states that CardConnect "will take all reasonable precautions to prevent the loss, misuse or alteration of your personal information." *Id.* at ¶ 84. Similarly, Section 6 of Fiserv's privacy policy "attests that Fiserv will install appropriate security measures to prevent against the unauthorized alteration of customer data." *Id.* at ¶ 85.

## 2. Chef Pirozzi's Discovery of the Missing Funds

On or about August 10, 2021, Chef Pirozzi attempted to contact CardConnect, upon discovering that CardConnect had ceased making transfers into Pirozzi's designated account. *Id.* at ¶¶ 23-24. On or about August 21, 2021 – after several attempts – Chef Pirozzi spoke with CardConnect employees known as "Delva" and "Heather." *Id.* at ¶ 26. At that time, Plaintiffs allege that approximately $325,000 in point-of-sale receipts were missing from Pirozzi's account. *Id.* at ¶ 27. Delva and/or Heather told Chef Pirozzi that CardConnect's records reflected that the Bank of America account number for Pirozzi's account was different than that which was operated by Pirozzi. *Id.* at ¶ 29. Chef Pirozzi was instructed to open a new bank account and provide information concerning that account to CardConnect. *Id.* at ¶ 33. Delva and/or Heather informed Chef Pirozzi that he would receive paperwork concerning the new account in the mail, which he should complete and return to another CardConnect employee, Bonnie Clark ("Clark"), after which time the missing funds would be deposited into the new account. *Id.* at ¶ 34. Chef Pirozzi was advised

that his account was to be managed only by the CardConnect and Fiserv management team, which included Delva, Heather, Clark, and Travis Bellet ("Bellet"). *Id.* at ¶ 36.

On or about September 10, 2021, Chef Pirozzi had yet to provide information regarding a new bank account to CardConnect. *Id.* at ¶ 39. Nonetheless, Clark contacted Chef Pirozzi and indicated she had received the requested documentation regarding Pirozzi's new bank account. *Id.* at ¶ 40. Clark indicated that a person purporting to be Chef Pirozzi provided a Chase Bank account number and changed the security information associated with the Pirozzi account. *Id.* at ¶¶ 40-42. Chef Pirozzi denied making any such call and authorizing such changes. *Id.* at ¶ 42. At Clark's instruction, Chef Pirozzi provided his new account information, such that the missing funds could be returned in one to two days. *Id.* at ¶¶ 42-43. When the funds were not returned approximately five days later, Chef Pirozzi attempted to contact Bellet, a manager at Fiserv, but did not receive a response. *Id.* at ¶ 46. At or around this time, Chef Pirozzi filed a complaint with the Laguna Beach Police Department regarding CardConnect's conduct. *Id.* at ¶ 47.

### 3. Further Communications with Defendants

Shortly thereafter, Bellet contacted Chef Pirozzi, apologizing for the inconvenience, and insisting that the missing funds would be returned. *Id.* at ¶ 48. At this time, approximately $700,000 in receipts were missing from Pirozzi's account. *Id.* Counsel for Defendants also contacted Chef Pirozzi, offering to immediately return approximately $325,000 of the missing funds in exchange for a release of liability from Pirozzi "for any and all wrongdoing associated with its conduct in

connection to Pirozzi, Inc." *Id.* at ¶¶ 50-51.  Although Pirozzi did not execute the release, CardConnect and Fiserv released approximately $427,000 to Pirozzi in or around October 2021.  *Id.* at ¶ 52.  Approximately $400,000 in receipts remain outstanding and had not been returned at the time of the filing of the Amended Complaint.  *Id.*  Fiserv's counsel informed Plaintiffs' counsel that Defendants transferred these funds to two bank accounts owned by unknown individuals.  *See id.* at ¶ 53.  Plaintiffs allege that due to the missing funds, Pirozzi Enterprises transferred funds to Pirozzi to cover the latter's expenses.  *Id.* at ¶ 55.

On or around November 3, 2021, Pirozzi ceased utilizing Defendants' systems and engaged another credit card processing vendor.  *Id.* at ¶ 56.  Nevertheless, CardConnect charged Pirozzi membership and servicing fees for December 2021, January 2022, and February 2022.  *Id.* at ¶ 57.

### B. Procedural History

Plaintiffs commenced this action against Defendants by way of Complaint dated November 22, 2021 in the Superior Court of the State of California, Orange County.  *See* Complaint ("Compl."), DE [1-1].  On December 29, 2021, Defendants removed the case to the United States District Court for the Central District of California on diversity jurisdiction grounds pursuant to 28 U.S.C. § 1332(a).  *See* Notice of Removal, DE [1].  The litigation was then transferred to this Court based upon the Agreement's forum selection clause.  *See* Order Granting Defendants' Motion to Transfer the Action to the Eastern District of New York, DE [14] (citing Section 44.2 of the Agreement).  The parties subsequently agreed that Plaintiffs

would voluntarily withdraw their original complaint and file an amended complaint, which Plaintiffs did on April 1, 2022. *See* Motion to Adjourn Conference, DE [20]; Am. Compl. The Amended Complaint seeks "all damages allowed by law," including, *inter alia*, compensatory and punitive damages, in amounts to be determined at trial, but not less than $1,000,000. Am. Compl. at 31. Plaintiffs further request an award of attorneys' fees and costs, a judicial declaration of the parties' rights, an injunction "to prevent harm from befalling Plaintiffs," and that the parties' Agreement be rescinded. *Id.* at 32.

On April 28, 2022, Defendants requested a pre-motion conference before Judge Gujarati, who referred the conference and subsequent motion to this Court for Report and Recommendation on June 23, 2022. *See* June 23, 2022 Referral Order. On September 16, 2022, Defendants moved to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* Def. Mot. Plaintiffs oppose. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp."), DE [36]. For the reasons set forth below, the Court respectfully recommends that Defendants' Motion be granted in part and denied in part.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Nevertheless, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action," however, that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies,*

*Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

## III. DISCUSSION

Defendants seek dismissal of the Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Defendants' Memorandum in Support of their Motion to Dismiss ("Def. Mem."), DE [35-1], at 4.  For the reasons set forth below, the Court respectfully recommends that Defendants' Motion be granted in part and denied in part.

### A. Fiserv's Liability as CardConnect's Parent Company

As a threshold matter, the Amended Complaint purports to hold Fiserv liable for actions undertaken by CardConnect on the basis that CardConnect is a wholly-owned subsidiary of Fiserv.  *See* Am. Compl. ¶ 5.  Under New York law, "a parent company is not automatically liable for the acts of its wholly-owned subsidiary," but may be held liable under an agency theory.  *DeGraziano v. Verizon Commc'ns, Inc.*, 325 F. Supp. 2d 238, 245 (E.D.N.Y. 2004).  To determine the existence of an agency relationship in the parent-subsidiary context, "the subsidiary must have the authority, either actual or apparent, to act on behalf of the parent corporation."  *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2016 WL 11120941, at *13 (E.D.N.Y. Mar. 11, 2016), *report and recommendation adopted in part*, No. 13-CV-5410, 2016 WL 1275045 (E.D.N.Y. Mar. 31, 2016), *and report and recommendation adopted*, No. 13-CV-5410, 2016 WL 3647687 (E.D.N.Y. Jul. 1, 2016).  Moreover, at the motion to dismiss stage, a plaintiff must set forth "specific allegations from which an agency

10

relationship [may] be inferred." *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 294 (S.D.N.Y. 2005).

Here, the Amended Complaint does not allege specific facts regarding the Defendants' relationship, but rather includes – in a single paragraph – conclusory statements that Fiserv exercised control over CardConnect. *See* Am. Compl. ¶ 7. As such, Plaintiffs have failed to allege that CardConnect acted as Fiserv's agent such that Fiserv can be held liable for CardConnect's conduct. Notwithstanding this conclusion, however, the Amended Complaint contains allegations regarding acts committed by Fiserv and its employees. As such, the Court will analyze whether Plaintiffs have stated a claim against both CardConnect and Fiserv, respectively, based on the alleged actions of each entity. The Court considers each cause of action asserted in the Amended Complaint in turn, unless otherwise indicated.

## B. <u>Breach of Contract – CardConnect's Breach of the Agreement (First Claim for Relief)</u>[1]

The first cause of action alleges that CardConnect breached its agreement with Pirozzi by, among other things, failing to transfer credit card receipts owed to Plaintiff and implement proper security measures, as required under the terms of the Agreement. Am. Compl. ¶ 72. "To establish a claim for breach of contract under New York law, a plaintiff must demonstrate '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv)

---

[1] The Court refers to each cause of action as they are labeled in the Amended Complaint. Some of the claims are addressed out of order to better facilitate analysis.

11

damages.'" *Zorbas v. U.S. Tr. Co.*, 48 F. Supp. 3d 464, 474 (E.D.N.Y. 2014) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

While the parties do not dispute that a valid contract existed, Defendants argue that Plaintiff has failed to properly plead its own performance. *See* Def. Mem. at 6. Specifically, Defendants argue that Pirozzi failed to maintain the security of its own information, as it is required to do under the Agreement. *Id.* at 6-7. Plaintiff has alleged, however, that it provided CardConnect with bank account information and did not make any changes to that information prior to August 2021. Am. Compl. ¶¶ 17, 22. Accepting these allegations as true, Pirozzi performed under the Agreement. Plaintiff has further alleged that CardConnect breached the Agreement by failing to transfer point-of-sale receipts to Pirozzi's designated bank account and that Plaintiff has been damaged in the amount of the outstanding funds. *Id.* at ¶¶ 72, 78. Accordingly, Pirozzi has adequately pled a claim for breach of contract against CardConnect, and the Court recommends that Defendants' Motion be denied as to the Amended Complaint's first claim for relief.

## C. Breach of Contract - Defendants' Breaches of the Privacy Policies (Second Claim for Relief)

Plaintiffs bring a second claim for breach of contract against CardConnect and Fiserv for violation of their respective online privacy policies. *Id.* at ¶¶ 80-82. As noted above, a breach of contract claim requires the formation of a valid contract. Further, "the essential element of contract formation" is mutual manifestation of assent. *Berson v. Gogo LLC,* 97 F. Supp. 359, 383 (E.D.N.Y. 2015). Here, the Amended Complaint fails to include any allegations that either Defendant

manifested an intention to enter a contract by way of its privacy policies. Plaintiffs allege that Defendants' privacy policies promise that they will "take all reasonable precautions to prevent the loss, misuse or alteration of your personal data" and "install appropriate security measures." Am. Compl. ¶¶ 84-85. This language does not reflect an agreement by Defendants to adopt any particular security measures or take any particular action. Courts in this Circuit have dismissed breach of contract claims based on similar privacy policies where the plaintiff failed to plead mutual assent. *See e.g., Pena v. Brit. Airways, PLC,* 849 F. App'x 13, 15 (2d Cir. 2021) (affirming dismissal of breach of contract claim where complaint lacked allegations that defendant agreed to be bound by privacy policy); *Wallace v. Health Quest Sys., Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *10 (S.D.N.Y. Mar. 23, 2021) (dismissing express breach of contract claim where privacy policy did not commit defendant to take particular action). Accordingly, Plaintiffs have failed to state a claim for breach of contract against Defendants based on their privacy policies.

In the alternative, Plaintiffs assert that Defendants' privacy policies are enforceable under the principles of promissory estoppel. Am. Compl. ¶ 82. "Under New York law, to state a claim for promissory estoppel, a plaintiff must allege: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 453 (E.D.N.Y. 2013) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)). Plaintiffs allege that they detrimentally relied on the promises contained in the privacy policies "when deciding

whether to transact business with CardConnect and Fiserv and furnish Plaintiffs'
sensitive banking information to them," and subsequently suffered damage when its
point-of-sale receipts went missing. Am. Compl. ¶¶ 82, 87. The Amended Complaint,
however, fails to include allegations that Pirozzi or Pirozzi Enterprises were aware of
the privacy policies prior to entering into the Agreement, such that it could have
reasonably relied on them in this manner. Moreover, Section 45.6 of the Agreement
provides that it "supersedes any previous agreements and understandings" between
the parties. Ex. A. to Am. Compl. at 38. Accordingly, even if reasonable reliance was
otherwise alleged, Plaintiffs have still failed to plead promissory estoppel. As a
result, the Court recommends that Defendants' Motion be granted with respect to the
second cause of action for breach of contract or, in the alternative, promissory
estoppel, and that this claim be dismissed.

### D. Fraud/Fraudulent Inducement (Fourth Claim for Relief)

Pirozzi further asserts a claim for "fraud/fraudulent inducement" against
CardConnect and Fiserv. Am. Compl. ¶¶ 93-102. To state a fraud cause of action
under New York law, a complaint must allege: "(1) a misrepresentation or omission
of material fact; (2) which the defendant knew to be false; (3) which the defendant
made with the intent of inducing reliance; (4) upon which the plaintiff reasonably
relied; and (5) which caused injury to the plaintiff." *Saltz v. First Frontier, LP*, 782
F.Supp.2d 61, 75 (S.D.N.Y. 2010) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156
(2d Cir. 2001)). The elements of a "fraudulent inducement" claim are functionally
equivalent to the elements of a general fraud claim. *See Wall v. CSX Transp., Inc.*,

471 F.3d 410, 415-16 (2d Cir. 2006) (elements of fraudulent inducement under New York law are "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance") (internal quotations & citations omitted).

In addition, a complaint asserting fraud must meet the higher pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure requiring that the claim be stated "with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) requires the plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F. 3d 1170, 1175 (2d Cir. 1993)). Further, a plaintiff must allege "facts that give rise to a *strong* inference of fraudulent intent." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (internal citations omitted) (emphasis in original).

The Amended Complaint sets forth two bases for Pirozzi's fraud claim. First, Plaintiff alleges that CardConnect and Fiserv falsely represented that its point-of-sale technology was secure, which Pirozzi relied on when entering into the Agreement. *See* Am. Compl. ¶ 94; *see also* Opp. at 10. Second, Plaintiff claims that Defendants' employees made false statements regarding the return of the missing funds, on which Pirozzi relied in remaining a CardConnect customer and paying

additional membership fees after the initial funds went missing.  *See* Am. Compl. ¶ 94; *see also* Opp. at 11.  The Court considers each argument in turn.

1. Statements Regarding CardConnect's Security Measures

Pirozzi alleges that "CardConnect represented that it would safely and securely maintain the credit card sale technology used by Pirozzi, Inc. and safely and securely transfer the sales receipts of Pirozzi's Inc.'s business to the correct Bank of America accounts maintained by Pirozzi Inc."  Am. Compl. ¶ 16.  According to Plaintiff, this statement was false, and it relied on this statement when entering into the Agreement.  *See id.* at ¶¶ 94, 98.  Pirozzi has failed however, to allege any facts that "give rise to a strong inference of fraudulent intent" with respect to this statement.  *First Cap. Asset Mgmt., Inc.*, 385 F.3d at 179; *see Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 363 (E.D.N.Y. 2014) (dismissing fraud claim where plaintiff failed to allege facts giving rise to fraudulent intent).  The Amended Complaint offers a single conclusory allegation regarding CardConnect's intent to induce Plaintiff to enter into the Agreement, but no facts that would support such a conclusion.  *See* Am. Compl. ¶ 97.  Accordingly, Pirozzi's fraud claim against CardConnect based on these statements fails.  Moreover, the Amended Complaint does not allege that the statements regarding CardConnect's security measures were

made by Fiserv. As such, Pirozzi also fails to state a cause of action for fraud against Fiserv on this alternative basis.

### 2. Statements Regarding the Return of Pirozzi's Funds

The Amended Complaint also sets forth several statements made by Defendants' employees regarding the return of the missing funds. *See e.g.,* Am. Compl. ¶¶ 29-34, 40, 42, 48. Specifically, "Delva and/or Heather" stated that the funds would be returned once Chef Pirozzi provided new bank account information, which was later reiterated by Clark. *See id.* at ¶¶ 33, 42. Bellet, a Fiserv manager, later made similar representations to Chef Pirozzi, but Pirozzi's funds were not returned in full. *Id.* at ¶ 48. Plaintiff has therefore pled that Defendants made material misrepresentations. The allegations in the Amended Complaint – when taken as true and viewed in their entirety – also establish Defendants' fraudulent intent. CardConnect and Fiserv employees repeatedly assured Chef Pirozzi that the funds would be returned, despite their continued inaction. *See id.* at ¶¶ 33, 42. Pirozzi has also pled that it reasonably relied on these statements to its detriment by choosing to remain a CardConnect customer, allowing CardConnect to continue to process its point-of-sale receipts, and paying membership fees to CardConnect. *See id.* at ¶ 99. As such, Plaintiff has successfully stated a claim for fraud against both Defendants based on these misrepresentations. Accordingly, the Court recommends that Defendant's Motion be denied with respect to Pirozzi's fraud claim regarding the statements concerning the return of the missing funds.

### E. **Indemnification (Seventh Claim for Relief)**

Under Section 33.2 of the Agreement, CardConnect agreed to indemnify Pirozzi against all loses "resulting from any breach of any warranty, covenant or agreement or any misrepresentation by us under this Agreement or arising out of our or our employees' gross negligence or willful misconduct in connection with this Agreement." Ex. A to Am. Compl. at 25. Based on the foregoing, Plaintiff asserts that CardConnect must indemnify Pirozzi because its employees engaged in "gross negligence" and "intentionally misled" Plaintiff regarding the return of the point-of-sale receipts. Am. Compl. ¶¶ 118-119. As noted above, Pirozzi has pled a breach of the Agreement and that CardConnect's employees made intentional misrepresentations concerning the return of the missing point-of-sale receipts. *See* Sec. III.D.2., *supra*. Accordingly, Plaintiff has stated a claim for indemnification against CardConnect under Section 33.2 and the Court recommends that Defendant's Motion be denied with respect to this cause of action.

### F. **Promissory Estoppel (Ninth Claim for Relief)**

Pirozzi next brings a cause of action for promissory estoppel against both Defendants, alleging that CardConnect and Fiserv promised to return the missing funds in full and that Plaintiff detrimentally relied on that promise, damaging Pirozzi when it remained a CardConnect customer and did not take steps to recover the receipts. *See* Am. Compl. ¶¶ 133-34. As noted above, to state a claim for promissory estoppel, a plaintiff must allege reasonable and foreseeable reliance on a clear and unambiguous promise. *See Kapsis,* 923 F. Supp. 2d at 453. Here, Plaintiff has alleged that representatives of both CardConnect and Fiserv promised to return the missing

funds. *See* Am. Compl. ¶¶ 43, 48 (alleging that Clark and Bellet promised that the funds would be returned). Further, Pirozzi has pled that it relied on this promise to its detriment when it chose to remain a CardConnect customer and forego additional efforts to recover the missing funds. *Id.* at ¶ 134. Although Defendants argue that this claim fails as duplicative of Plaintiff's breach of contract claim, the existence of a contract does not preclude a promissory estoppel claim based on promises made after the contract was formed. *See Icebox-Scoops v. Finanz St. Honore, B.V.,* 676 F. Supp. 2d 100, 115 (E.D.N.Y. 2009). Pirozzi alleges that it relied on statements regarding the missing funds made after the Agreement with CardConnect was entered into. Moreover, with respect to Fiserv, it is not a party to the Agreement in any event. Accordingly, the Court recommends that the Motion be denied with respect to Plaintiff's promissory estoppel claim against both Defendants.

### G. <u>Money Had and Received (Tenth Claim for Relief)</u>

Pirozzi asserts a claim for money had and received against both Defendants based on their possession of "funds and assets rightfully [belonging] to Pirozzi, Inc." Am. Compl. ¶ 139. To state a claim for money had and received, a plaintiff must allege that "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 275 (E.D.N.Y. 2021) (internal quotation marks omitted). Such claims sound in quasi-contract and cannot be brought where a contract governs

the same subject matter as the relief sought. *See id.; Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 292 (S.D.N.Y. 2019).

With respect to CardConnect, although the subject matter of Pirozzi's claim is governed by the Agreement, Plaintiff's claim for money had and received is pled in the alternative to its breach of contract claim. *See* Opp. at 18; *see Almazan v. Almazan,* No. 14-CV-311 AJN, 2015 WL 500176, at *14 (S.D.N.Y. Feb. 4, 2015) (permitting money had and received and breach of contract to be pled in the alternative); *Kalimantano GmbH v. Motion in Time, Inc.,* 939 F. Supp. 2d 392, 416 (S.D.N.Y. 2013) (same). Pirozzi has alleged that CardConnect received funds belonging to Plaintiff. *See* Am. Compl. ¶¶ 52, 138. The Amended Complaint further states that CardConnect benefitted from the receipt of those funds, in the form of continued payment of membership fees through February 2022. *See id.* at ¶¶ 57, 138. Lastly, under "principles of equity and good conscience," CardConnect should not be permitted to keep Pirozzi's point-of-sale receipts. *See Shak*, 549 F. Supp. 3d at 275. As a result, Plaintiff has adequately pled a cause of action for money had and received against CardConnect. As to Fiserv, however, Plaintiff has failed to allege that Defendant "received money belonging to [Pirozzi]" and as such, this claim fails as a matter of law. *See id.* Accordingly, the Court recommends that Defendants' Motion be denied with respect to Pirozzi's claim for money had and received against CardConnect and granted as against Fiserv.

**H. Rescission (Eleventh Claim for Relief)**

Pirozzi further seeks to rescind the Agreement with CardConnect on the basis of commercial impracticability, its material breaches, and CardConnect's alleged fraud. Am. Compl. ¶¶ 142-44. "Rescission of a contract is an extraordinary remedy that is generally unavailable under New York law." *St. Francis Holdings, LLC v. MMP Cap., Inc.*, No. 20-CV-4636, 2022 WL 991980, at *15 (E.D.N.Y. Mar. 31, 2022) (quoting *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 5 (S.D.N.Y. 2020)) (internal quotation marks omitted). "Because it is an equitable remedy, rescission is available only if damages would not be a 'complete and adequate' remedy." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 227 (2d Cir. 2017) (quoting *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 43 (1972)). Courts in this district, however, typically allow rescission claims to survive at the pleading stage when pled in the alternative. *See Fertitta v. Knoedler Gallery, LLC,* No. 14-cv-2259, 2015 WL 374968, at *12 (S.D.N.Y. Jan. 29, 2015) (collecting cases); *see Deutsche Alt–A Sec. Mortgage Loan Trust, Series 2006–OA1 v. DB Structured Products, Inc.,* 958 F.Supp.2d 488, 506 (S.D.N.Y. 2013) ("[W]hether [Plaintiff] may seek equitable remedies requires the Court to make factual determinations for which there is no support in the record at this stage.").

Pirozzi seeks rescission of the Agreement in the alternative to its breach of contract claim on three grounds: (1) commercial impracticability and frustration of purpose, (2) CardConnect's fraudulent inducement of Pirozzi to enter into the Agreement, and (3) CardConnect's breach of the Agreement. *See* Opp. at 20.

Consistent with these standards, rescission based on breach of an agreement may be appropriate where the breach is "material and willful, or, if not willful, so substantial or fundamental as to strongly tend to defeat the object of the contract." *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 950 F. Supp. 504, 514 (E.D.N.Y. 1997); *see Barbagallo v. Marcum LLP,* 925 F. Supp. 2d 275, 287 (E.D.N.Y. 2013), aff'd, 552 F. App'x 102 (2d Cir. 2014) ("A breach is material . . . if it goes to the root of the agreement between the parties.") (internal citations omitted). Moreover, the materiality of a breach of contract is "usually a question of fact" and should not be determined at the pleading stage. *Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015) (quoting *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 380 (S.D.N.Y. 2014)). Here, Plaintiff has pled that CardConnect breached the Agreement by failing to transfer Pirozzi's point-of-sale receipts, which is sufficiently substantial so as to defeat the object of the contract. As such, Plaintiff has successfully pled a rescission claim on this ground. Accordingly, the Court respectfully recommends that Defendants' Motion be denied with respect to Pirozzi's claim for rescission based on CardConnect's breach.

## I. <u>Aiding and Abetting the Commission of a Tort (Twelfth Claim for Relief)</u>

The Amended Complaint asserts a claim for aiding and abetting the commission of a tort on behalf of both Plaintiffs and against CardConnect and Fiserv. *See* Am. Compl. ¶¶ 146-50. The elements of aiding and abetting a tort are "(1) the existence of an underlying tort; (2) the defendant's knowledge of the underlying tort; and (3) that the defendant provided substantial assistance to advance the underlying

tort's commission." *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 273 (E.D.N.Y. 2012), *order amended on reconsideration*, No. 10-CV-3983, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013) (quoting *Bigio*, 675 F. 3d at 172)).  To satisfy the knowledge element of an aiding and abetting claim, the plaintiff "must allege that the defendant had actual knowledge of the wrongful conduct committed, not simply that the defendant should have known of the conduct."  *In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011).

Plaintiffs allege that Defendants aided an unknown third-party fraudster "in the commission of [the] fraud and conversion of Plaintiffs' assets."  Am. Compl. ¶ 147. They have pled the existence of an underlying conversion, namely that "a third-party fraudster . . . execute[d] a scheme to steal from Pirozzi, Inc."  *Id.* at ¶ 148.  There are, however, no allegations that either CardConnect or Fiserv had knowledge of this purported scheme.  Plaintiffs assert that Clark spoke with an individual she believed to be Chef Pirozzi and received new bank account information.  *See id.* at ¶ 42.  But the Amended Complaint lacks any allegations that any employee of CardConnect or Fiserv in fact knew they were communicating with a third-party fraudster rather than Chef Pirozzi.  Accordingly, the Court recommends that Defendants' Motion be granted with respect to Plaintiffs' claim for aiding and abetting a tort.

## J.  **Declaratory Relief (Thirteenth Claim for Relief)**

Pirozzi further seeks a judicial declaration against CardConnect that:  (1) CardConnect waived Sections 27.3 and 27.4 of the Agreement – the limitation-of-liability provisions – via the actions and statements of its employees, (2) Sections 27.3

and 27.4 are unenforceable due to CardConnect's material breach of the Agreement, (3) Sections 27.3 and 27.4 are unenforceable as against public policy, (4) Sections 27.3 and 27.4 do not relieve CardConnect of liability for its own negligence, and (5) Sections 27.3 and 27.4 do not apply to Fiserv. Am. Compl. ¶¶ 153-57.

The Declaratory Judgment Act "provides a remedy, not a cause of action . . . and a court 'may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief.'" *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, No. 16-cv-6370, 2017 WL 6729854, at *11 (E.D.N.Y. Oct. 31, 2017), aff'd, 736 Fed. Appx. 274 (2d Cir. 2018) (quoting *KM Enterprises, Inc. v. McDonald*, No. 11-cv-5098, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), aff'd, 518 Fed. Appx. 12 (2d Cir. 2013)). Further, courts within this Circuit have found a "cause of action for a declaratory judgment [to be] unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract.'" *Id.* (quoting *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 135 (N.D.N.Y. 2008)) (alterations in original); *see Harbor Distrib. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 213 (E.D.N.Y. 2016); *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action.").

Here, Plaintiff's claims for declaratory relief can be "properly resolved through the adjudication of its coercive claim sounding in breach of contract." *Zam & Zam Supermarket, LLC*, 2017 WL 6729854, at *12; *see Camofi Master LDC v. Coll. P'ship,*

*Inc.,* 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (dismissing declaratory relief as duplicative where legal determination sought would be resolved by a breach of contract claim). The legal issues at the heart of each of Pirozzi's claims for declaratory relief – the scope and enforceability of Sections 27.3 and 27.4 of the Agreement– will necessarily be resolved by Pirozzi's breach of contract claim, which provides for damages. Accordingly, the Court recommends that Defendants' Motion be granted with respect to Plaintiff's claims for declaratory relief.

### K. <u>Unjust Enrichment (Fourteenth Claim for Relief)</u>

Pirozzi next brings a claim for unjust enrichment against CardConnect alone, with respect to service fees paid after Defendants' original breach of contract and failure to return the missing funds. *See* Am. Compl. ¶¶ 158-61. "To state a claim for unjust enrichment under New York law, a plaintiff must allege (1) that the defendant was enriched at the plaintiff's expense and (2) that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 579–80 (E.D.N.Y. 2014) (quoting *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009)). A cause of action for unjust enrichment "sounds in quasi-contract and cannot lie where an enforceable contract governs the disputed matter." *Speedfit LLC,* 53 F. Supp. 3d at 580 (citing *Labajo v. Best Buy Stores, L.P.*, 478 F.Supp.2d 523, 530–31 (S.D.N.Y. 2007)).

Pirozzi alleges that CardConnect was unjustly enriched when it continued to accept Plaintiff's membership fees when it was no longer providing credit card processing services. Am. Compl. ¶ 159. Although the Agreement governs Pirozzi's

payment of fees to CardConnect for use of its services, Plaintiff's cause of action for unjust enrichment is pled in the alternative. *See* Opp. at 25; *see Speedfit LLC,* 53 F. Supp. 3d at 580 (noting that where plaintiff disputes the existence of an agreement, unjust enrichment and breach of contract may be pled in the alternative). The Amended Complaint alleges that CardConnect was enriched at Pirozzi's expense – *i.e.,* by collecting membership fees from Plaintiff after November 2021 – and that equity requires Defendant make Plaintiff whole. Am. Compl. ¶¶ 57, 159-61. These allegations are sufficient to defeat Defendants' motion to dismiss and, the Court recommends that Defendants' Motion be denied with respect to Plaintiff's unjust enrichment cause of action.

## L. <u>Plaintiffs' Remaining Tort Claims (Third, Fifth, Sixth, and Eighth Claims for Relief)</u>

### 1. <u>Pirozzi's Remaining Tort Claims Against CardConnect are Duplicative of Plaintiff's Breach of Contract Claims.</u>

Pirozzi asserts a number of tort claims against CardConnect – bailment, conversion, breach of fiduciary duty, and negligence – that all arise from the same alleged wrongful conduct, *i.e.*, Defendant's failure to properly transfer Plaintiff's point-of-sale receipts. *See generally* Am. Compl. Each of these claims are duplicative of Pirozzi's breach of contract claim and should be dismissed.

Under New York law, tort claims "based on the same facts as the cause of action to recover damages for breach of contract generally should be dismissed as duplicative." *Novick v. AXA Network, LLC*, 714 F. App'x 22, 24 (2d Cir. 2017) (internal quotation marks omitted); *see Pandisc Music Corp. v. Red Distribution,*

LLC, No. 04-cv-9365, 2005 WL 646216, at *1 (S.D.N.Y. Mar. 18, 2005) (dismissing claims for conversion and bailment as duplicative of breach of contract). Moreover, claims for negligence and breach of fiduciary duty fail where the plaintiff fails to plead a duty independent of the contract itself. *Torok v. Moore's Flatwork & Foundations*, LLC, 106 A.D.3d 1421, 1422, 966 N.Y.S.2d 572, 574 (3d Dep't 2013) (dismissing negligence claim for failure to assert an independent duty); *Morgenroth v. Toll Bros.*, 60 A.D.3d 596, 597, 876 N.Y.S.2d 378, 380 (1st Dep't 2009) (dismissing breach of fiduciary duty claim on the same grounds). Here, Plaintiff's tort claims are based on the same alleged wrongful conduct as its breach of contract claim, and Pirozzi pleads no independent duty owed to it by CardConnect. Accordingly, the Court recommends that Defendants' Motion be granted with respect to Plaintiff's claims for bailment, conversion, breach of fiduciary duty, and negligence against CardConnect, and that those causes of action be dismissed.

      2.  <u>Pirozzi's Remaining Tort Claims against Fiserv Fail as a Matter of Law.</u>

Pirozzi also brings the same tort claims – *i.e.,* bailment, conversion, breach of fiduciary duty, and negligence – against Fiserv. *See generally* Am. Compl. Because Fiserv was not a party to the Agreement, these claims are not duplicative of Plaintiff's breach of contract claim. Nonetheless, each fails as a matter of law.

*a. Conversion and Bailment*

A cause of action for bailment and conversion both require that the defendant possess money or property belonging to the plaintiff. *See Benex LC v. First Data Merch. Servs. Corp.*, No. 14-CV-6393, 2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16,

2016) (holding that an element of conversion is that "defendant exercised an unauthorized dominion over" plaintiff's property); *Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d 112, 119 (E.D.N.Y. 2005) (defining bailment as including "delivery of personal property for some particular purpose"). Here, there are no allegations that Fiserv was in possession of Pirozzi's point-of-sale receipts, and as such, both claims fail as a matter of law. The Court therefore recommends that Defendants' Motion be granted with respect to Pirozzi's causes of action for conversion and bailment against Fiserv and that each claim be dismissed.

### b. Negligence and Breach of Fiduciary Duty

To state a claim for negligence under New York law, a plaintiff must allege "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). Further, "the elements of a breach of fiduciary duty claim are (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010). Although the Amended Complaint contains conclusory allegations that Defendants owed certain duties to Pirozzi, it fails to allege the specific duty *Fiserv* owed to Plaintiff. As such, Pirozzi has failed to allege that Fiserv owed an ordinary or fiduciary duty sufficient to state either a negligence or a breach of fiduciary duty claim. Accordingly, the Court recommends that Defendants' Motion be granted as to Pirozzi's causes of action for

negligence and breach of fiduciary duty against Fiserv and that those claims be dismissed.

### 3. Pirozzi Enterprises' Negligence Claim Against Both Defendants Fails as a Matter of Law.

The Amended Complaint also asserts a negligence claim against both Defendants on behalf of Pirozzi Enterprises. *See* Am. Compl. ¶¶ 121-31. As noted above, an essential element of a negligence claim is that the defendant owed a duty to the plaintiff. Pirozzi Enterprises has failed to plead that either Defendant owed a specific duty to Pirozzi Enterprises with regards to Pirozzi's missing point-of-sale receipts. Pirozzi Enterprises' claim derives from a single allegation that it "was forced to transfer funds to Pirozzi, Inc., pay for Pirozzi, Inc.'s expenses and invoices, and take on additional debt" as a result of Defendants' actions. Am. Compl. ¶ 55. This is insufficient to allege any type of duty.

Moreover, even if Pirozzi Enterprises had pled the existence of a duty, it has failed to plead that such duty was breached. Under New York law, "[w]hether a breach of duty has occurred depends upon whether the resulting injury was a reasonably foreseeable consequence of the defendant's conduct. *Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank, N.A.*, 645 F. Supp. 2d 248, 257 (S.D.N.Y. 2009) (quoting *Danielenko v. Kinney Rent A Car Inc.*, 57 N.Y.2d 198, 455 N.Y.S.2d 555, 558 (1982)). There are no allegations to suggest that Defendants could have foreseen Pirozzi Enterprises' transfer of funds to Pirozzi, or that Pirozzi Enterprises was under any obligation to do so. Instead, it appears that the transfer was made voluntarily to protect Pirozzi's business. Accordingly, the Court recommends that Defendants'

Motion be granted with respect to Pirozzi Enterprises' negligence claim against both Defendants and that such cause of action be dismissed.[2]

### M. Leave to Amend

Although Plaintiffs have not sought leave to further amend the Amended Complaint, the Court addresses the issue nonetheless. Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2). However, it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Courts may properly dismiss a complaint without granting leave to amend when the plaintiff fails to cross-move for leave to do so in response to the pertinent motion to dismiss. *See Augienello v. Coast-to-Coast Fin. Corp.*, 64 F. App'x 820 (2d Cir. 2003) (holding dismissal for failure to state a claim was warranted in part due to the plaintiffs' failure to seek leave to amend); *see also Lynn v. McCormick*, No. 17-cv-1183, 2017 WL 6507112, at *7 (S.D.N.Y. Dec. 18, 2017) (denying leave to amend where the plaintiffs did not request such relief). Moreover, if a plaintiff fails to cure pleading deficiencies after being given an opportunity to do so, denial of leave to amend is appropriate. *See Payne v. Malemathew*, No. 09-cv-1634, 2011 WL 3043920, at *5 (S.D.N.Y. Jul. 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*.").

---

[2] Given that the Court has recommended that each of Pirozzi Enterprises' claims be dismissed, the Court recommends that Pirozzi Enterprises be dismissed as Plaintiff in this action.

As noted above, Plaintiffs have previously amended their Complaint. *See generally* Am. Compl. Moreover, Pirozzi and Pirozzi Enterprises were provided notice of the deficiencies in their original Complaint via Judge Carney's decision on Defendants' motion to transfer this action from the Central District of California to this Court. *See* DE [14] (describing the duplicative nature of many of Plaintiffs' claims). Finally, Pirozzi does not seek leave to amend in any event. Accordingly, and for all of these reasons, the Court recommends that Plaintiffs be denied leave to further amend the Amended Complaint.

## IV.   CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that Defendants' Motion to Dismiss be granted in part and denied in part, that Pirozzi Enterprises be dismissed as Plaintiff in this action, that Pirozzi's second, third, fifth, sixth, eighth, twelfth, and thirteenth causes of action be dismissed in their entirety, and that Pirozzi's tenth cause of action be dismissed as to Fiserv, with prejudice and without leave to amend.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008);

*Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84

F.3d 52, 60 (2d Cir. 1996).


Dated:       Central Islip, New York
                June 1, 2023

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge
